Jason A. Newfield (JN-5529
Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

CAROL MARTUCCI,                                        :

               Plaintiff,     :        10 CV 6231 (BSJ)(RLE)

                     :

       - against -                              :        **ECF**

                     :

HARTFORD LIFE INS. CO.                                 :

                     :

             Defendant.       :

-------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

Of Counsel:        Jason A. Newfield (JN-5529)
                 Justin C. Frankel (JF-5983)

## **TABLE OF CONTENTS**

**Page**

**INTRODUCTION**…………..……………………………………………………………....1

I.    HARTFORD'S UNSUSTAINABLE ATTACK ON THE
CARDIOPULMONARY TESTING……………………………………………....1

II.    HARTFORD IS UNABLE TO SUPPORT THE CLAIM
DETERMINATION WITH SUBSTANTIAL EVIDENCE…………………………5

III.    HARTFORD REFUSES TO ACKNOWLEDGE *GLENN*'S
IMPACT UPON A COURT'S DETERMINATION TO
WHETHER TO UPHOLD A CLAIM TERMINATION…………………………8

IV.    HARTFORD'S DECLARATIONS SEEKING TO AVOID
THE IMPLICATION OF ITS CONFLICT OF INTEREST
ARE CHALLENGED BY EVIDENCE…………………………………………11

V.    MARTUCCI SHOULD BE ENTITLED TO DEPOSE LUDDY…………………13

**CONCLUSION**……………………………………………………………….......14

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page</u>

<u>Alexander v. Hartford Life & Acc. Ins. Co.</u>
2008 U.S. Dist. LEXIS 118436 (N.D. Tex. 2008)……………………………………...2

<u>Alford v. Hartford Life Ins. Co.</u>
2008 U.S. Dist. LEXIS 43654 (E.D. Pa. 2008)……………………………………….2

<u>Amich v. Sedgwick Claims Mgmt. Servs.</u>
2011 U.S. Dist. LEXIS 20091 (E.D. Wisc. 2011)…………………………………...4

<u>Baird v. Prudential Ins. Co. of Am.</u>
2010 U.S. Dist. LEXIS 100941 (S.D.N.Y. 2010)…………………………………...13

<u>Barnes v. Hartford Life Ins. Co.</u>
2008 U.S. Dist. LEXIS 115443 (E.D. Mich. 2008)…………………………………..2

<u>Brosnahan v. Barnhart</u>
336 F.3d 671 (8th Cir. 2003)………………………………………………………...3

<u>Day v. Hartford Life Ins. Co.</u>
2009 U.S. Dist. LEXIS 101857 (D. S.C. 2009)……………………………………...2

<u>Diamond v. Reliance Standard Life Ins.</u>
672 F.Supp.2d 530, 537 (S.D.N.Y. 2009)………………………………………...…10

<u>Dorholt v. Hartford Life & Acc. Ins. Co.</u>
417 F.Supp.2d 1094, 1103 (D. Minn. 2006)………………………………………….2

<u>Durakovic v. Bldg. Serv. 32 BJ Pension Fund</u>
609 F.3d 133, 140 (2d Cir. 2010)……………………………………………………9

<u>Holler v. Hartford Life & Acc. Ins. Co.</u>
737 F.Supp.2d 883, 897 (S.D. Ohio 2010)……………………………………….4, 10

<u>Kosiba v. Merck & Co.</u>
2011 U.S. Dist. LEXIS 23247 (E.D. Pa. 2011)……………………………………...4

<u>Lake v. Hartford Life & Acc. Ins. Co.</u>
320 F.Supp.2d 1240 (M.D. Fla. 2004)……………………………………………….2

<u>Magee v. Met Life</u>
632 F.Supp.2d 308, 320 (S.D.N.Y. 2009)…………………………………..…4, 7, 9, 10

*i*

McCauley v. First Unum Life Ins. Co.
551 F.3d 126, 133 (2d Cir. 2008)…………………………………………….…..9, 10

McDaniel v. Hartford Life & Acc. Ins. Co.
2008 U.S. Dist. LEXIS 76402 (M.D. Ga. 2008)…………………………………...2

Met Life v. Glenn
128 S.Ct. 2343 (2008)……………………………….…..……………….....8, 9, 10

Montour v. Hartford Life & Acc. Ins. Co.
588 F.3d 623, 634 (9th Cir. 2009)…………………………………………...10, 11

Perrin v. Hartford Life Ins. Co.
2008 U.S. Dist. LEXIS 53065 (E.D. Ky. 2008)………………………………...2

Post v. Hartford
501 F.3d 154 (3d Cir. 2007)………………………………………………………...11

Reed v. Hartford Life & Acc. Ins. Co.
2008 U.S. Dist. LEXIS 54159 (E.D. Mich. 2008)……………………………...2

Schexnayder v. Hartford Life & Acc. Ins. Co.
600 F.3d 465, 469 (5th Cir. 2010)……………………………………………...2

Schully v. Cont'l Cas. Co., 634 F.Supp.2d 663 (E.D. La. 2009)
aff'd 2010 U.S. App. LEXIS 11573 (5th Cir. 2010)……………………………11

Sloan v. Hartford Life & Acc. Ins. Co.
433 F.Supp.2d 1037, 1041 (D. N.D. 2006)……………………………………...2

Strope v. Unum Provident Corp.
2010 U.S. Dist. LEXIS 28313 (W.D.N.Y. 2010)………………………………10

Tripp v. Hartford Life & Acc. Ins. Co.
337 F.Supp.2d 196, 200 (D. Me. 2004)………………………………………...2

Vollenweider-Leos v. Hartford Life & Acc. Ins. Co.
2009 U.S. Dist. LEXIS 17329 (N.D. Iowa 2009)………………………………2

Weilep v. Astrue
2010 U.S. Dist. LEXIS 5543 (E.D. Wash. 2010)………………………………3

Whealen v. Hartford Life & Acc. Ins. Co., 2007 U.S. Dist. LEXIS 51335 (C.D. Cal. 2007)
aff'd 2009 U.S. App. LEXIS 20641 (9th Cir. 2009)……………………………11

**Statutes, Rules, and Regulations**

ERISA §1104(a)(1)……………………………………………………………………………9

29 CFR § 2560.503-1, et seq……………………………………………………...............13

Fed. R. Civ.P.56(f)…………………………………………………………………………13

## INTRODUCTION

Plaintiff Carol Martucci ("Martucci") respectfully submits this memorandum of law in opposition to Defendant Hartford's motion for summary judgment. Hartford's memorandum of law helps illuminate why Hartford failed to provide Martucci a full and fair review of her claim, as well as why Hartford abused its discretion in reaching its claim determination.

Hartford's memorandum of law contains unsupported argument, and advances positions that are undercut by their own conduct in other cases, along with important mis-characterizations of the record. As a result, its credibility is severely strained, and its efforts to provide post-hoc justifications for its erroneous claim determination must fail. As noted below and in Martucci's moving papers, Hartford's claim determination lacks substantial evidence. Further, Hartford's claim handling conduct demonstrates that Martucci was not afforded a full and fair review of her claim. Accordingly, Hartford abused its discretion.

## I.   HARTFORD'S UNSUSTAINABLE ATTACK ON THE CARDIOPULMONARY TESTING

Hartford goes to great lengths seeking to remove Martucci's Cardiopulmonary Exercise testing from the Court's consideration, conduct that serves to underscore the significance of this evidence. (000159-62)[1]. For numerous reasons, these efforts fail. First, Hartford attacks the ability of Dr. Betsy Keller to administer and interpret such testing, claiming that because she is not a medical doctor, but rather an Exercise Physiologist, she is not legally competent to offer a medical

---

[1]  CardioPulmonary Exercise Testing (CPET) is considered the "gold standard" for objectively documenting functional capacity. The authors of all of the leading publications about this type of testing are either PhDs or Exercise Physiologists. The report submitted by Dr. Christopher Snell (Exhibit "D") offers further support for this type of testing in general, and the testing administered by Dr. Betsy Keller.

opinion as to the results of the testing[2]. Hartford's argument is severely undercut by consideration of its own actions in a multitude of ERISA disability cases, wherein Hartford retained physical therapists to perform Functional Capacity Testing that it then relied upon in an effort to justify a claim termination.[3]

—————————————————

[2]     The qualifications of Dr. Betsy Keller are found on the Ithaca College web site. http://faculty.ithaca.edu/keller/. They show her to have a Doctor of Philosophy in Exercise Science, a Master of Science in Exercise Science, and a Bachelor of Science. Mrs. Keller is also on the esteemed faculty for the 2011 IACFS/ME Biennial Conference, where she will present on "Exercise Testing to Quantify Effects of Fatigue on Functional Capacity in Patients with CFS. http://www.iacfsme.org/Conferences/2011AgendaProfessional/tabid/461/Default.aspx.

She has also participated in a number of publications, including:

J Mark VanNess, Christopher R. Snell, Staci R. Stevens, Lucinda Bateman and Betsy Keller (June, 2006). Using Serial Cardiopulmonary Exercise Tests to Support a Diagnosis of Chronic Fatigue Syndrome. Medicine & Science in Sports & Exercise 38 (5), S85.

J. Mark VanNess, Christopher R. Snell, Staci R. Stevens, Randi Gibbons-Radin, and Betsy Keller (October, 2004). Impaired aerobic metabolism 24-hours post exercise in chronic fatigue syndrome. American Association of Chronic Fatigue Syndrome's 7th International Research and Clinical Conference, Madison, WI.

[3]     There are a multitude of published decisions where Hartford compelled an ERISA claimant to undergo a Functional Capacity Evaluation (FCE) with a Physical Therapist (a non-doctor) and/or accepted a claimant FCE, and then relied upon the results of the FCE to support a termination of benefits. See Schexnayder v. Hartford Life & Acc. Ins. Co., 600 F.3d 465, 469 (5th Cir. 2010); Day v. Hartford Life Ins. Co., 2009 U.S. Dist. LEXIS 101857, * 9-10 (D. S.C. 2009); Tripp v. Hartford Life & Acc. Ins. Co., 337 F.Supp.2d 196, 200 (D. Me. 2004); Sloan v. Hartford Life & Acc. Ins. Co., 433 F.Supp.2d 1037, 1041 (D. N.D. 2006); Reed v. Hartford Life & Acc. Ins. Co., 2008 U.S. Dist. LEXIS 54159, * 12 (E.D. Mich. 2008); Perrin v. Hartford Life Ins. Co., 2008 U.S. Dist. LEXIS 53065, * 3 (E.D. Ky. 2008); Barnes v. Hartford Life Ins. Co., 2008 U.S. Dist. LEXIS 115443, * 14 (E.D. Mich. 2008); McDaniel v. Hartford Life & Acc. Ins. Co., 2008 U.S. Dist. LEXIS 76402, * 4 (M.D. Ga. 2008); Lake v. Hartford Life & Acc. Ins. Co., 320 F.Supp.2d 1240 (M.D. Fla. 2004); Dorholt v. Hartford Life & Acc. Ins. Co., 417 F.Supp.2d 1094, 1103 (D. Minn. 2006); Alford v. Hartford Life Ins. Co., 2008 U.S. Dist. LEXIS 43654, * 8 (E.D. Pa. 2008); Alexander v. Hartford Life & Acc. Ins. Co., 2008 U.S. Dist. LEXIS 118436, * 4-5 (N.D. Tex. 2008); Vollenweider-Leos v. Hartford Life & Acc. Ins. Co., 2009 U.S. Dist. LEXIS 17329, * 3-4 (N.D. Iowa 2009).

2

Second, in seeking to develop its further procedural attacks upon Dr. Keller's competency to administer this testing and offer opinions about the results of this testing, Hartford relies upon Social Security cases addressing a court's consideration of the weight to be afforded to psychologists' opinions addressing physical functionality issues[4]. Clearly, these cases cited by Hartford have no parallel to this case, and serve to demonstrate the infirmity of this argument. Third, while Hartford claims that Dr. Keller is unqualified to offer a medical opinion about the results of the testing, it obviously overlooks the fact that it had a nurse (with no indication of any training or experience with Chronic Fatigue Syndrome) interpreting **ALL** of the medical records, and offering her opinions. Hartford's position is completely incongruent – how can a nurse be qualified to offer medical opinions, but a Ph.D Professor be incompetent to render an opinion on a specific area that she is eminently qualified in?

Fourth, Hartford ignores the fact that Dr. Bell provided his own assessment of the Cardiopulmonary Exercise Testing, during his discussion with Dr. Knapp. ("Dr. Bell noted that a 2 day exercise test revealed a low anaerobic threshold and that activity resulted in anaerobic metabolism.") (000141). Thus, even if the testing were performed by a non-doctor, Martucci's treating physician evaluated the significance of the results in formulating his opinion regarding Martucci's functionality. Lastly, where Hartford attempts to substantively attack Dr. Keller's findings, interpretations, and opinions, such conduct only serves to highlight the deficiencies within Hartford's claim review, Dr. Knapp's medical review, and Hartford's wholesale reliance upon Dr.

---

[4]    Hartford cites Weilep v. Astrue, 2010 U.S. Dist. LEXIS 5543 (E.D. Wash. 2010), Buxton v. Halter, 246 F.3d 762 (6th Cir. 2001), and Brosnahan v. Barnhart, 336 F.3d 671 (8th Cir. 2003) as purported support for its attack upon Dr. Keller. Those cases were Social Security challenges, with the courts addressing why limited weight was afforded to opinions offered by various professionals.

Knapp.  Counsel for Hartford attempts to develop a number of attacks upon the testing results, all

post-hoc arguments that cannot be considered by the Court, but significant for highlighting why Dr.

Knapp's report lacks any analysis and cannot constitute substantial evidence supporting Hartford's

claim determination.[5]  In any event, these attacks are refuted by the report submitted herein by Dr.

Christopher Snell, and serve to support the conclusions reached by Dr. Keller, and Dr. Bell in his

interpretation of the testing.

The results of the two day testing demonstrated  that Martucci had "low functional capacity

and poor ability for aerobic energy production." (000159).  As is the appropriate protocol, this testing

was conducted on consecutive days, November 12, and 13, 2009. Despite Hartford's current attack

upon the results of the testing, the results revealed that Martucci's maximum oxygen consumption

(VO2 max) was 50-60% below age and gender matched norms.  This was equivalent to a moderate

to marked functional aerobic impairment.  Id.[6]  The conclusion reached was that Martucci had

"diminished functional capacity" with "low exercise tolerance and recovery such that many jobs and

household tasks require her to work consistently above her anaerobic threshold." (000162).  It was

opined that "this intensity of effort, ***sustained for more than several minutes***, will elicit a significant

and persistent fatigue response." Id. (emphasis added).  What is also significant about the test results

---

[5]      See Magee v. Met Life, 632 F.Supp.2d 308, 320 (S.D.N.Y. 2009);  Kosiba v. Merck
& Co., 2011 U.S. Dist. LEXIS 23247, * 46 (E.D. Pa. 2011)(expressing concerns about justifications
offered for the first time in federal court); Amich v. Sedgwick Claims Mgmt. Servs., 2011 U.S. Dist.
LEXIS 20091, * 39-40 (E.D. Wisc. 2011)(unwilling to consider counsel's assertions made in
litigation, and not by the medical professionals that actually formed the basis for the claim
determination); Holler v. Hartford Life & Acc. Ins. Co., 737 F.Supp.2d 883, 897 (S.D. Ohio 2010).

[6]      Hartford attacks the conclusions reached by Dr. Keller, as not being translatable to
the work setting, claiming confusion as to why someone could not sit at a desk all day every day
when they could potentially have only a maximum ability to do minimal chores.

4

is that Martucci reported a history of regular exercise of 3-5 miles of walking and resistance training five days per week. (000159).

Hartford has no meaningful response to the opinion that sustained activity for more than several minutes causes Martucci a significant and persistent fatigue response. It is abundantly clear that these findings firmly support Martucci's impairment. Yet, Hartford ignores this opinion - placing all of its emphasis elsewhere on the report, its administration, and the purported lack of qualifications of the examiner, an implicit admission of the significance of this information. For all the reasons outlined above, Hartford's attack on the Cardiopulmonary Exercise Testing fails.

## II.     HARTFORD IS UNABLE TO SUPPORT THE CLAIM DETERMINATION WITH SUBSTANTIAL EVIDENCE

Hartford does not even argue that its claim determination was supported by substantial evidence. Instead, Hartford argues that "[T]he Medical Records that Martucci Submitted In Support Of Her Administrative Appeal Do Not Support Restrictions and Limitations for Her Claim of Disability Under the Terms of the STD Plan" (Point A(1)), and that "Hartford's Determination Was Not Influenced By Conflict Of Interest." (Point B). Yet, at its core, it is clear that in order for the Court to uphold Hartford's decision, Hartford's claim determination must be supported by substantial evidence. There is no substantial evidence supporting Hartford's claim determination. There is, however, substantial evidence that Martucci did provide regarding her functional restrictions and limitations. The evidence was largely ignored. Thus, by failing to support its claim determination with substantial evidence, Hartford abused its discretion.

The parties agree that Dr. Knapp spoke with Dr. Bell on January 27, 2010. (000141).

5

However, Hartford makes unsubstantiated claims concerning their discussion, which it then attempts to present as fact. As one example, Hartford claims that during the phone call between Dr. Knapp and Dr. Bell,"Dr. Bell merely reiterated his findings without further elaboration." (Def. Brief, p. 8). How then can such an allegation be made, without any first hand knowledge? Hartford provides no transcript of the call, as there apparently was none, nor did Dr. Knapp ever seek to confirm the discussion points in writing with Dr. Bell, nor did Dr. Knapp claim that Dr. Bell merely reiterated his findings without further elaboration. In fact, a review of the report reveals that this purported statement is untrue. (000141-43). Thus, it is clear that Hartford is revising history and again making post-hoc arguments in a desperate attempt to rescue its paltry and biased claim consideration.

Specifically, Dr. Bell pointed to the testing which demonstrated idiopathic hypovolemia with decreased circulating blood volume, and the 2 day exercise testing which revealed a low anaerobic threshold and that activity resulted in anaerobic metabolism. These issues were not a "reiteration" but were the specific documented findings which Dr. Bell was relying upon to support his opinions that Martucci was functionally impaired. (000141). This is evidence of Martucci's functional impairment.

In contrast with the well articulated support provided by Dr. Bell, Dr. Knapp's report is replete with conclusions, but these conclusions are either woefully under-supported or wholly unsupported. For example, Dr. Knapp alleges that the diagnostic findings (unidentified) were "non-specific". (000142). While not identifying what diagnostic findings he was referring to, it is clear that a number of diagnostic findings were, in fact, specific, including the blood volume testing,

which revealed the presence of idiopathic hypovolemia, the SF-36 results[78], and the Cardiopulmonary Exercise Testing. Moreover, inasmuch as Dr. Knapp spoke with Dr. Bell, he could have discussed any concerns about "non-specific" findings with Dr. Bell. Martucci claims that the evidence submitted was specific, and that Dr. Knapp simply chose to ignore the significance of these findings, because he was actually unqualified to appreciate the significance of these findings or insurer biased and refused to accept the significance of these findings. It is clear from the record, however, that Dr. Knapp did not discuss the significance of any of the testing which Hartford now attacks in its motion.

Instead, Dr. Knapp formulated generic hypotheses that "fibromyalgia is not a condition that requires restrictions and limitations in the absence of clinically significant objective orthopedic, medical or neurologic impairments as determined by physical examination, imaging studies and/or laboratory testing", and "[i]n the absence of clinical medical impairments, medically unexplained symptoms, fibromyalgia and related functional somatic syndromes including chronic fatigue are often a manifestation of somatization associated with major mood disturbances and anxiety disorders." (000143). Not to leave the generic conclusions above alone, Dr. Knapp also stated that "the medical literature strongly supports behavioral and psychiatric considerations regarding the etiology of fibromyalgia and related functional somatic syndromes." Id. Curiously, Hartford has

---

[7]    While Hartford provides a citation for the SF-36, it fails to address that within the same citation, there is significant discussion about the reliability and validity of the SF-36. www.sf-36.org/tools/sf36.shtml; See also Magee, 632 F.Supp.2d at, 313 (discussing that Dr. Bell described the SF-36 as "an extremely validated indicator of overall disability.").

[8]    Hartford also tries to minimize the impact of the SF-36 by suggesting that Dr. Bell did not provide Hartford with a copy of Martucci's answers to the questions.  (Def. Brief, p.7). Neither Hartford nor the claim file makes mention of whether it actually sought the materials, or even notified Martucci that such material was required, important, significant, or otherwise helpful.

7

been unable to demonstrate that Dr. Knapp supported these statements with any literature. Moreover, Dr. Knapp is unable to specifically opine that Martucci falls within this generic description that he offers, since he never met, treated, examined or evaluated her. Lastly, it does not appear that Dr. Knapp engaged in discussion with Dr. Bell regarding these purported concerns.

Yet, without the benefit of any examination, evaluation or treatment of Martucci, Dr. Knapp also opined that the "claimant appears to have complaints out of proportion to any medical or orthopedic pathology documented." (000143). Thus, it is apparent that Dr. Knapp provides a number of "whats", but inexplicably fails to provide any "hows" or "whys", critical omissions that are fatal to his opinions. Accordingly, his report cannot be considered substantial evidence to support Hartford's claim determination, despite Hartford's assertion that its decision "was fairly based on a variety of different items of proof in the record." (Def. Brief, p. 21).

### III.   HARTFORD REFUSES TO ACKNOWLEDGE <u>GLENN'S</u> IMPACT UPON A COURT'S DETERMINATION TO <u>WHETHER TO UPHOLD A CLAIM TERMINATION</u>

Hartford limits its discussion of <u>Met Life v. Glenn</u>, 128 S.Ct. 2343 (2008) to the issue of the conflict of interest, steadfastly refusing to acknowledge that in the wake of <u>Glenn</u>, courts are now required to conduct more searching reviews in order to determine whether an administrator's decision can be upheld. Instead, relying upon pre-<u>Glenn</u> cases, Hartford asserts that its decision must be afforded "great deference". (Def. Brief, p. 12). It thus appears that Hartford disregards the teachings of <u>Glenn</u>, and considers the judicial landscape from the prism of pre-<u>Glenn</u> law.

Hartford also refuses to appreciate that following <u>Glenn</u>, "ERISA imposes higher-than-marketplace quality standards on insurers", which "sets forth a special standard of care upon a plan

administrator, namely that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan." Id. at 2349-50, quoting ERISA §1104(a)(1).  McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008). It is understandable that Hartford would want to avoid the implications of Glenn, as this more searching review that Glenn has imposed serves to reveal the extent to which Hartford abused its discretion and failed to afford an appropriate review of Martucci's claim.

Moreover, while myopically focusing on its argument that there is no consideration to be afforded to the conflict of interest here, predicated upon the self-serving affidavits presented[9], Hartford fails to appreciate the Second Circuit has articulated that"evidence that the conflict affected a decision may be categorical (such as 'a history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct), and may have bearing also on whether a particular decision is arbitrary and capricious." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 140 (2d Cir. 2010).  Thus, Hartford's claim of walling off its claims and financial departments does nothing to address the specific claim handling conduct which Martucci has demonstrated to be biased, result oriented and lacking fundamental fairness.

With its wholesale embrace of Dr. Knapp's biased report, and his generic opinions and shoddy and incomplete report, Hartford has demonstrated its bias against Martucci.  Magee, 632 F.Supp.2d at 319.  By failing to undertake to even appreciate whether Dr. Knapp had the necessary qualifications to perform a comprehensive review of Martucci's records, Hartford demonstrated a lack of fundamental fairness.  By initially relying upon a nurse to render medical opinions of

---

[9]     These self serving affidavits serve to underscore why a deposition would be appropriate of Mr. Luddy, to probe these issues.  Thus, Plaintiff raises a Rule 56(f) argument.

evidence (which Hartford asserts is wholly inappropriate when it comes to those non-medical doctor medical professionals who support Martucci's claim), Hartford demonstrated that it is not interested in developing claim neutral information from qualified medical professionals.  By engaging in a "one-sided" consideration of the claim, Hartford's conduct was influenced by a conflict of interest. McCauley, 551 F.3d at138 ([R]eliance on one medical report to the detriment of a more detailed contrary report, without further investigation was unreasonable.").  Finally, through its selective consideration of the evidence, and its efforts to bootstrap justification for denying the claim based upon "normal" findings in a claimant suffering from Chronic Fatigue Syndrome (which is a hallmark of the disorder), Hartford demonstrates that its conduct was influenced by a conflict of interest. Met Life v. Glenn, 128 S.Ct. 2343, 2352 (2008)(discussing factors that led Sixth Circuit to reverse district court and grant benefits); Magee, 632 F.Supp.2d at 318 (which notably dealt with a self-funded claim); Strope v. Unum Provident Corp., 2010 U.S. Dist. LEXIS 28313, at * 17-18 (W.D.N.Y. 2010); Diamond v. Reliance Standard Life Ins., 672 F.Supp.2d 530, 537 (S.D.N.Y. 2009)(holding that where the chief symptoms of the illnesses are subjective-such as those symptoms associated with fibromyalgia and CFS - "weight should be given to the treating physician's findings since that physician has the most experience with the patient and his or her history with the symptoms of the illness.").  In other words, "Hartford's bias infiltrated the entire administrative decisionmaking process, which leads us to accord significant weight to the conflict." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 634 (9th Cir. 2009).

In addition to Hartford's case specific bias identified above, courts have found Hartford to have a history of biased claim administration, or have identified conduct that could lead to a conclusion that Hartford acts in a biased manner against claimants. Holler v. Hartford Life & Acc.

10

Ins. Co., 737 F.Supp.2d at 890 ("Defendant has a clear history of 'biased claim administration.'");

Montour, 588 F.3d at 634; Schully v. Cont'l Cas. Co. (Hartford), 634 F.Supp.2d 663, 683-85 (E.D. La. 2009), aff'd 2010 U.S. App. LEXIS 11573 (5th Cir. 2010); Whealen v. Hartford Life & Acc. Ins. Co., 2007 U.S. Dist. LEXIS 51335 (C.D. Cal. 2007), aff'd 2009 U.S. App. LEXIS 20641 (9th Cir. 2009); Post v. Hartford, 501 F.3d 154 (3d Cir. 2007).

## IV.   HARTFORD'S DECLARATIONS SEEKING TO AVOID THE IMPLICATIONS OF ITS CONFLICT OF INTEREST ARE CHALLENGED BY EVIDENCE

In support of its motion for summary judgment, Hartford has submitted employee declarations, which they claim support a finding that Hartford walled-off its claims and financial departments. These carefully crafted declarations are refuted, however, by documentation that has been secured in other Hartford ERISA disability cases, which demonstrate that the financial implications of claims are, in fact, an important issue for the claim personnel. Thus, while the declaration of Bruce Luddy attempts to claim that the Ability Analysts, Short Term Disability Specialists and Appeal Specialists are not provided with any incentives, remuneration, bonuses, awards, achievements or other recognition based in whole or in part upon the denial or termination of claims, it appears that personnel involved with the review and consideration of disability claims are mindful of the financial implications involved with their caseload. See Exhibit "A", which is an affirmation with Exhibits filed by Scott Riemer, Esq., counsel for Karen Barrett, in a matter entitled *Karen Barrett against Hartford Life and Accident Insurance Company*, pending in the Southern District of New York, Index No.: 10CV(AKH)(MHD) (Document 29). One of the exhibits is a performance review that was produced by Hartford in another ERISA matter, *Jacoby v. Hartford*,

11

2009 U.S. Dist. LEXIS 6498 (S.D.N.Y. 2009(Kaplan, J.).  The Riemer affirmation notes that the documents are not confidential - despite being stamped as such.

These performance reviews show definitively that Hartford claim personnel are made keenly award of the "cost savings" realized by the specific claim personnel.[10]   Moreover, Bruce Luddy testified in a deposition that the claim personnel receive compensation, including salary and bonus, on the basis of their performance evaluations.[11]   Bruce Luddy also testified that the claims personnel are generally aware of the profitability of the group benefits division.  See Luddy Depo., p.58, lines 3-6 (Exhibit "B").  Accordingly, this Court should give short shrift to the Luddy Declaration as evidence of any walling off of claims, as the claim personnel are clearly mindful of the business goals of Hartford, its profitability, and that their compensation is tied into their ability to realize cost savings.

The Luddy declaration does offer one piece of compelling information for the Court, to wit: that "Hartford administers claims in substantially the same manner whether it is doing so under a fully insured policy or pursuant to an administrative services only agreement." (Luddy Dec., ¶ 6.).  Thus, Hartford's entire argument that no conflict can be considered because it has no financial stake in the outcome is eviscerated, since where Hartford administers claims substantially the same

---

[10]     This information is derived from the performance review of Chris (last name redacted), under the objective "Facilitate outcome driven claim management plans through effective interactions with providers, claimants, policyholders and vendors."  In one review, it is noted that Chris realized  a cost savings of approximately $ 4,062,185.00 for the team.  In another review, it is noted that Chris' "total dollar savings were $ 3,131,224.00".  (Exhibit "C").

[11]     Attached as Exhibit "B" is a deposition transcript of Bruce Luddy, from a case captioned Bender v. Hartford Life Ins. Co., 09-cv-1163 (N.D. Cal.), taken on May 28, 2010.  See p. 18, lines 6-11 ("The compensation that people receive in terms of salary or bonus is based upon their performance evaluations.)

regardless of whose money is at stake, any impact that a conflict of interest would ordinarily have would carry similar implications here. And as noted above, there are clear financial implications communicated to claim personnel.

Further, the assertion offered by Hartford that the appeal department is a separate unit from the claim department is of no consequence when considering the issue of the conflict of interest. It is Hartford's undisputed obligation, under ERISA and the governing Regulations (29 CFR § 2560.503-1, et seq.), to provide for a review that does not afford deference to the initial adverse benefit determination. See 29 CFR §2560.503-1(h)(4). By complying with its obligations under the Regulations, Hartford seeks to be insulated from consideration of the conflict of interest, and seeks to have the conflict of interest disappear. It is respectfully submitted that the crafted declarations demonstrate nothing of significance, particularly in the face of documentation revealing that Hartford's claim personnel are keenly aware of the financial implications and cost savings "realized" by their claim actions.

More significantly, however, is the fact that the specific claim handling at issue here serves to demonstrate less than a full and fair review, as articulated with specifics above.


## V.    MARTUCCI SHOULD BE ENTITLED TO DEPOSE LUDDY

The Federal Rules of Civil Procedure, under Fed. R. Civ.P.56(f), set forth a specific procedure by which a party lacking information necessary to oppose a summary judgment motion may seek further discovery. See e.g. Baird v. Prudential Ins. Co. of Am., 2010 U.S. Dist. LEXIS 100941, * 27-28 (S.D.N.Y. 2010). Martucci cannot present facts essential to justify its opposition on the conflict of interest issue without a deposition of Bruce Luddy, whose declaration Hartford

13

relies upon in support of its motion for summary judgment.  The information contained in the Declaration of Jason Newfield, Esq., serve to satisfy the required 56(f) showing of entitlement to discovery.  Documents that Martucci has attached to this motion serve to demonstrate that the Luddy Declaration contains errors, and a deposition is critical to better address the nature and substance of the purported efforts made by Hartford to wall off its claim personnel from financial considerations.

In the absence of such discovery, the Court must strike these self-serving declarations whose veracity is at issue.

## CONCLUSION

Martucci has demonstrated that Hartford abused its discretion in terminating her benefits, and its conduct was improper in failing to afford a neutral, full and fair review in its claim handling. Accordingly, Martucci's motion for summary judgment must be granted.  Alternatively, if genuine issues of fact exist, the Court should hold a trial with testimony from witnesses to address the issues in dispute and assess the credibility of the actors involved in the claim.

Lastly, the Court should permit Martucci to depose Bruce Luddy, prior to the decision on the cross-motions for summary judgment.

Dated: Garden City, New York
August 18, 2011

Respectfully Submitted,

Jason Newfield (JN5529)
Frankel & Newfield, P.C.
Attorneys for Plaintiff

14