UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------

| | | |
|---|---|---|
| CAROL MARTUCCI, | : | |
| | : | |
| Plaintiff, | : | 10-6231 (BSJ)(RLE) |
| | : | |
| - against - | : | **ECF** |
| | : | |
| HARTFORD LIFE INSURANCE | : | RULE 56.1 COUNTER |
| COMPANY, | : | STATEMENT OF |
| | : | MATERIAL FACTS |
| | : | |
| Defendant. | : | |

----------------------------------------------------------

Pursuant to Local Civil Rule 56.1 of the Local Rules governing the United States District Court, for the Southern District of New York, Plaintiff, Carol Martucci, submits this counter statement of materials facts:

**INTRODUCTION:**

Plaintiff Carol Martucci will not respond to the allegations which reference the self serving affidavits prepared by Defendant from Bruce Luddy and Debra McGee, as these are not part of the record to be considered by the Court, and have not been subject to cross examination.

I.   Plaintiff controverts the following numbered statements contained in Defendant's Rule 56.1 statement:

(A)   1.   Disputed. The cited document notes the start date but indicates "Supp" for Job Title.

(B)   3.   Disputed in part. The cited Document reflects that for New York employees, a portion of the benefits are state-mandated benefits, and the remainder is self-insured.

(C)   6.   Disputed in part. The medical records, in total, speak to the medical issues

|     |     |     |
| --- | --- | --- |
| (D) | 9. | suffered by Martucci. Defendant attempts to limit the medical issues. The document cited by Defendant discusses Martucci's "extreme fatigue and muscle cramping, pain and discomfort". |
| (D) | 9. | Admit in part. Defendant has not denied that Martucci was under the care of a licensed physician, nor that her sole reason for being disabled is due to her inability to commute to the workplace. |
| (E) | 11. | Disputed. Martucci defers to the Court's interpretation of the definitions in the policy, but notes that the cited documents do not address the terms utilized by Defendant. |
| (F) | 12. | Martucci defers to the Court's interpretation of the definitions in the policy. |
| (G) | 13. | Martucci did not have a phone discussion with Temika Kindred on the date indicated, and defers to the Court's interpretation of the cited document. |
| (H) | 15. | Disputed in part. The medical records, in total, speak to the medical issues suffered by Martucci. Defendant attempts to limit the medical issues. The document cited by Defendant discusses Martucci's "extreme fatigue and muscle cramping, pain and discomfort". Further notes that the referenced document addresses symptoms of tingling legs and arms, muscle cramping with Irritable Bowel Syndrome as a co-morbid condition. (000114). Further notes that Martucci articulated that her joints in her fingers were very sore and it was difficult to use the keyboard, when heavy computer work was required. (000115). |
| (I) | 17. | See response to Item 15. |
| (J) | 22. | Admitted only that at the time of this initial discussion, Dr. Bell had |

|     |     | |
| --- | --- | --- |
|     |     | attempted to create a modified work schedule to help with Martucci's difficulties. |
| (K) | 21. | Disputed in part. Martucci advised that she needed rest at intervals with respect to the personal care, which Defendant has not noted. (000115). |
| (L) | 24. | Note that the referenced facility (Oak Orchard Community Health Center) was Dr. David Bell, and that Hartford never requested any prior medical records from Dr. Bell, despite a long standing patient relationship with Martucci. |
| (M) | 25. | Admitted only that the document cited by Defendant contains a portion of the statement alleged, but that Dr. Bell also indicated that "these treatments are unlikely to improve activity." (000187). |
| (N) | 27. | Disputed. Hartford does not appear to have undertaken to appreciate the significance of Dr. Bell's restrictions, and has offered an interpretation without any basis. There is no record evidence to support this statement, other than Defendant's claim personnel indicating same in the diary note. Admitted that the Defendant's diary note speaks for itself but lacks any basis. |
| (O) | 28. | Disputed. Admit only that Defendant is isolating findings at office visits, but that the office visit note cited speaks for itself. Dr. Bell has provided a wealth of information and medical support, and not simply one office note. |
| (P) | 29. | Disputed in part. Note that the referenced document notes that Martucci complained of being "tired" with nausea, and frontal headaches, being stiff, crampy, with her legs hurting. Note further that the hallmark of Chronic Fatigue Syndrome is an absence of "findings" on test results. |

(Q)   30.   Disputed in part. Note that Dr. Bell's assessment included that Martucci suffered from "Chronic Fatigue Syndrome", "Chronic Othostatic hypotension", "fibromyalgia" (000185). Note further that Dr. Bell indicated that Martucci is "unable to continue to work; hands hurt so much she is unable to type. Continued exhaustion." *Id.*

(R)   32.   Note that this was his assessment, but refer to response (Q) above.

(S)   33.   Disputed in part. Note that the document (000153) takes Martucci out of work, but dispute that no reason was provided, as the office note discusses the myriad of conditions impairing Martucci. (000184)("unable to return to work because of symptoms/exhaustion.").

(T)   34.   Disputed. Nurse Ennis is not qualified to render any opinions as a non-physician. Moreover, there is no evidence in the claim record to demonstrate that Nurse Ennis understands or appreciates the medical conditions at issue. Note that her "opinion" runs counter to Hartford's Best Practices, which reflect that self-reported complaints can be evidence of disability. (Exhibit "A").

(U)   35.   See Response to Statement 34. Note further that Hartford's Best Practices disfavor requiring objective findings. (Exhibit "A")

(V)   36.   See Response to Statement 34. Note further that by making this statement, Nurse Ennis has demonstrated that Hartford is not complying with its own claim guidelines, by demanding objective evidence, particularly when the conditions at issue are not readily revealed by test results.

(W)   37.   Disputed in part. Defendant quotes only a portion of the referenced

document, and fails to address the true nature of the letter, which was to provide a discussion of the evidence supporting impairment.

(X) 39. See Response to Statement 37.

(Y) 41. Disputed in part. Note that Dr. Bell's records did, in fact, provide more blood pressure readings, as evidenced by (000174), to support his opinions.

(Z) 42. Disputed in part. Dr. Bell offered a wealth of evidence to support his opinion, but did state that he believed Martucci was telling the truth. Note that as the treating physician, with a long standing relationship with Martucci, he was in a far superior position to consider the validity of Martucci's self reports than a nurse who never met, treated or evaluated Martucci, nor had any demonstrated training or experience with the medical conditions at issue, and a far superior position to consider the validity of Martucci's self reports than a claim examiner who never met, treated or evaluated Martucci, nor had any demonstrated training or experience with the medical conditions at issue, and he was in a far superior position to consider the validity of Martucci's self reports than a paper reviewing doctor who never met, treated or evaluated Martucci, nor had any demonstrated training or experience with the medical conditions at issue.

(AA) 44. Dispute. This is a conclusion, unsupported by the record. In fact, Martucci had a number of tests and examinations which supported not only her diagnoses, but her functional impairments. (000154-55, 000156, 000157, 000159-62).

(BB) 45. Disputed. There is no evidence supporting a conclusion that Patrick Flores

reviewed the "evidence", as his claim note indicates that Martucci "cease working due to fatigue" (000106), when the records reveal significantly more symptoms than fatigue. Thus, is appears that he did not review the evidence. Moreover, since he characterized there being no diagnostic testing performed (000107), it is apparent that he failed to consider the evidence.

(CC) 46. See Response to Statement 45.

(DD) 47. Disputed. This was an opinion provided by Patrick Flores, without the appreciation of the medical issues. There is no evidence that Mr. Flores ever met, or evaluated Martucci, nor is there any evidence to nor had any evidence to demonstrate he had any training or experience with the medical conditions at issue. His note speaks for itself.

(EE) 48. Disputed. Dr. Bell provided his opinions based upon the test results and examination findings in the record. See Response to Statement 44.

(FF) 49. See Response to Statement 47.

(GG) 50. See Response to Statement 47.

(HH) 51. See Response to Statement 47, but note that the position advanced by Martucci relates to Ivonne Cotto, for which there is no evidence to demonstrate she had any training or experience with the medical conditions at issue.

(II) 53. Admit that the letter speaks for itself. Dispute that the information in the file was properly considered by Defendant, or that it was "considered as a whole", as a number of test results were ignored.

(JJ) 55. Disputed in part. Admit that the letter speaks for itself. Dispute any of Mr.

Flores' findings, conclusions or opinions, as being counter to the evidence cited in response to Statement 44.

(KK) 56. Disputed. Dr. Bell supported impairment on the basis of the evidence. <u>See</u> Response to Statement 44.

(LL) 57. Disputed. <u>See</u> Response to Statement 47. There is no evidence that Mr. Flores ever met, or evaluated Martucci, nor is there any evidence to nor had any evidence to demonstrate he had any training or experience with the medical conditions at issue.

(MM) 58. Disputed in part. The document speaks for itself. <u>See</u> Response to Statement 47.

(NN) 59. Disputed in part. The referenced letter failed to comply with the ERISA regulations. Hartford's letter advising of the rejection of Martucci's claim, dated October 12, 2009, (000122-25), does nothing to specifically advise her of what is actually required in order for Hartford accept liability of her claim. As noted by the Second Circuit, "[t]he purpose of the full and fair review requirements is to provide claimants with enough information to prepare adequately for further administrative review or an appeals to the Federal Courts." <u>Juliano v. HMO of N.J. Inc.</u>, 221 F.3d 279, 287 (2d Cir. 2000). "In simple English, what 29 C.F.R. § 2560.503-1(f) calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries." <u>Id</u>. at 287.

(OO) 60. Disputed in part. Martucci's letter, referenced at (000203), indicated that she was appealing, and was having her doctor provide addiitional medical

support.

(PP) 63. Disputed in part. The orthostatic testing provided for a section entitled "Clinical" to address what was observed and communicated at regular intervals. (000157).

(RR) 64. Disputed. The results of the orthostatic testing not only supported the diagnosis of CFS, but provided evidence of impairment in functionality, as articulated by Dr. Bell. (000180).

(SS) 65. Disputed in part. The SF-36 is a well recognized test for CFS and an "extremely validated indicator of overall disability." See Magee v. Met Life, 632 F.Supp.2d 308, 313 (S.D.N.Y. 2009).

(TT) 66. Note that Defendant never sought a copy of the Martucci's answers to the questions on the test form, nor did it make any meaningful evaluation of the results. Admit that the results supported impairment, and that it was "consistent with her clinical history and inability to participate in sustained work."

(UU) 68. Disputed in part. Admit that the November 13, 2009 was sent to Defendant. Dispute that Dr. Bell did not address Martucci's functional ability and restrictions. Note that Defendant never meaningfully evaluated this material.

(VV) 69. Admit in part. The document speaks for itself. Note that Dr. Bell referred to studies from the National Institute of Health, and that Dr. Bell opined that Martucci is likely not perfusing her brain properly.

(WW) 70. Dispute. Dr. Bell opined numerous times that Martucci was totally disabled. (000153, 000158, 000180, 000141).

(XX) 71. Dispute. There is no record evidence to support this statement. The only indication of this statement is within Defendant's diary note, but nothing from Martucci's doctor supports this purported position.

(YY) 72. Note that the testing results speak for themselves. Note further that the Cardiodiopulmonary exercise testing was done according to protocol. See Using Exercise Testing to Document Functional Disability in CFS, Staci Stevens, *Clinical Management of Chronic Fatigue Syndrome*, pp. 127.

(ZZ) 80. Disputed. The information contained in this statement is taken from Dr. Keller's report. (000159-162).

(aa) 82. Disputed in part. Note that the specific functional impairment figure was at the margin of moderate and marked.

(bb) 83. Disputed in part. Note that the specific functional impairment figure was at the margin of moderate and marked. There was no moderate-marked category, which is actually where this appropriately fits based upon the scoring.

(cc) 84. Disputed. Defendant misinterprets the results. Refer the Court to the full report from Dr. Keller. ("In this patient, energy production shifts to predominantly non-aerobic sources at a **very low** workload." (Emphasis added).(000160).

(dd) 85. Disputed. Dr. Keller is an expert in this field, and provided her opinions on Martucci's functionality on the basis of the entirety of the testing, rather than isolating and parsing pieces of the testing, and myopically focusing and emphasizing specific pieces. Note further that the difficulties that Dr. Keller

|     |     |     |
| --- | --- | --- |
|     |     | identified for Martucci would make it impossible for her to engage in activities of any kind on a sustained basis. Note that if one is unable to engage in activities of daily living, it would be largely impossible to engage in work activities (even sedentary). |
| (ee) | 86. | <u>See</u> Response to Statement 85. |
| (ff) | 87. | <u>See</u> Response to Statement 85. Note further that the difficulties that Dr. Keller identified for Martucci would make it impossible for her to engage in activities of any kind on a sustained basis. Note that if one is unable to engage in activities of daily living, it would be largely impossible to engage in work activities (even sedentary). |
| (gg) | 88. | Disputed in part. Note that Dr. Bell had the benefit of evaluating and examining Martucci, and thus was able to formulate his medical diagnoses on that basis. In contract, Defendant and its hired physician, none of whom have demonstrated any experience or training with the conditions at issue, were without the benefit of an examination or evaluation of Martucci. |
| (hh) | 91. | Disputed. MES Solutions is not an independent entity, but a third party vendor that panders to insurance companies, earning millions of dollars annually from its work on behalf of insurance companies. |
| (ii) | 92. | Disputed in part. The document speaks for itself. |
| (jj) | 95. | Disputed. It is readily apparent that Dr. Knapp did not review or consider all of the evidence. He simply dismissed out of hand the substantial medical evidence supporting Martucci's impaired functionality. Further dispute that Dr. Bell reiterated his findings without elaboration. A review of Dr. Knapp's |

|     |     |     |
| --- | --- | --- |
|     |     | report demonstrates that this statement is false. Specifically, Dr. Bell pointed to the testing which demonstrated idiopathic hypovolemia with decreased circulating blood volume, and the 2 day exercise testing which revealed a low anaerobic threshold and that activity resulted in anaerobic metabolism. These issues were not a "reiteration" but were the specific documented findings which Dr. Bell was relying upon to support his opinions that Martucci was functionally impaired. (000141). |
| (kk) | 96. | Disputed.  The document speaks for itself.  Note that Dr. Knapp's conclusions lack merit and have been revealed to be incorrect through the evidence cited by Martucci. |
| (ll) | 97. | See Response to Statement 96. |
| (mm) | 98. | See Response to Statement 96. Note that Dr. Knapp did not identify any tests or studies that would facilitate support for impairment, he just rejected the results provided, without explanation or discussion. |
| (nn) | 99. | See Response to Statement 96. Note that Dr. Knapp did not identify any tests or studies that would facilitate support for impairment, he just rejected the results provided, without explanation or discussion. |
| (oo) | 100. | See Response to Statement 96. Note that Dr. Knapp did not identify any tests or studies that would facilitate support for impairment, he just rejected the results provided, without explanation or discussion. |
| (pp) | 101. | See Response to Statement 96. Note that Dr. Knapp did not identify any tests or studies that would facilitate support for impairment, he just rejected the results provided, without explanation or discussion. |

(qq)   102.   The document speaks for itself. Dispute that Dr. Knapp has no financial interest in the outcome, as he is a regular provider of reports to insurance companies.

(rr)   103.   Disputed. No evidence supports this statement, beyond McGee's self serving statements. The fact that she blindly adopted the flawed opinions of Dr. Knapp demonstrates that she could not have reviewed or considered all of the evidence. Neither she nor Dr. Knapp make any attempt to address the medical significance of the testing performed upon Martucci.

(ss)   106.   Disputed. Dr. Bell's opinion did change over time, and was and is supported by the various clinical and test results which were administered to Martucci.

(tt)   109.   Disputed in part. The document speaks for itself, but note that Martucci's job description is not in the claim file.

(uu)   110.   Disputed in part. The document speaks for itself. Dispute that Defendant considered the totality of the evidence.

(vv)   111.   Admit only that a letter was provided to Martucci advising of the claim determination on appeal.

(ww)   112.   Admit only that a letter was provided to Martucci advising of the claim determination on appeal.

(yy)   113.   Admit only that a letter was provided to Martucci advising of the claim determination on appeal.

(zz)   115.   Disputed. Admit only that a letter was provided to Martucci advising of the claim determination on appeal. Disputed that Ms. McGee summarized the medical records; rather, she simply adopted Dr. Knapp's medical review.

(aaa)   116.   Disputed that Ms. McGee reviewed all of the documentation. Admit that the document at issue speaks for itself.

(bbb)   119-138.   Disputed. The sole basis for these statements are the self serving declarations of individuals who have not been subjected to cross examination and whose "testimony" lacks credibility and validity.

Dated: Garden City, New York
August 18, 2011

Respectfully submitted,

_____
JASON NEWFIELD (JN5529)
JUSTIN C. FRANKEL (JF5983)
Attorneys for Plaintiff
Frankel & Newfield, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600