UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CAROL MARTUCCI,                                                    Civ. Act. No.: 10-cv-6231 (BSJ)

                Plaintiff,

    -against-                                                        **DEFENDANT'S COUNTER
                                                                                  STATEMENT TO PLAINTIFF'S
HARTFORD LIFE INSURANCE COMPANY,                RULE 56.1 STATEMENT**

                Defendant.                                     DOCUMENT
----------------------------------------------------------X   ELECTRONICALLY FILED

      Pursuant to Rule 56.1 of the Local Civil Rules For The Southern And Eastern Districts of New York, Defendant Hartford Life And Accident Insurance Company sued herein as Hartford Life Insurance Company ("Hartford"), by and through its attorneys, Sedgwick LLP, submits this Counter Statement to Plaintiff's Rule 56.1 Statement dated July 28, 2011, Doc. No. 25, as follows:

## PRELIMINARY STATEMENT

      Hartford states that it has filed its Rule 56.1 Statement of Material Facts dated July 28, 2011, Doc. No. 32, in support of its own motion for summary judgment. Rather than restating those statements herein, Hartford respectfully refers this Court to Defendant's Rule 56.1 Statement for supplemental facts asserted in opposition to Plaintiff's motion.

## PRELIMINARY OBJECTIONS

      1.    Hartford objects to each and every Statement to the extent that Plaintiff has failed to include citations to record evidence that would be admissible as set forth in Rule 56(e), FED. R. CIV. PROC.

      2.    Hartford objects to each and every Statement that references evidence that was not identified in Plaintiff's Rule 26(a) Disclosure, or otherwise, produced in discovery.

      3.    Hartford objects to each and every Statement to the extent that it references hearsay evidence not attached to a sworn declaration or affidavit made on personal knowledge.

4. Hartford objects to each and every Statement to the extent it relies on information or evidence outside the administrative record to prove Plaintiff's alleged entitlement to benefits.

5. Hartford objects to each and every Statement to the extent that it treats issues of law as issues of fact.

6. Hartford objects to each and every Statement to the extent that it references "facts" that are not material to the pending motion for summary judgment.

7. Hartford objects to each and every Statement to the extent it is not a short and concise statement.

**RESPONSES**

1. Denies, except admits that Plaintiff Carol Martucci ("Martucci") was employed as a Branch Operator in a JP Morgan Chase ("JP Morgan") call center and was therefore eligible to enroll in and was a participant in the short term disability plan established and maintained by JP Morgan and entitled JPMorgan Chase Disability Leave Policy effective January 1, 2008 (the "STD Plan"). (1, 240).[1]

2. Denies, except admits that the STD Plan is designed to provide a Plan participant with continued income if he or she should become unable to work because of an approved disability, pursuant to the terms, conditions, limitations and exclusions of the STD Plan. (1).

3. Denies, except admits that the STD Plan does not cover disability resulting from war or any act of war, a member's active participation in a riot, a member's participation in a felony, a disability related to a member's elective cosmetic surgery or recuperation of such surgery as set forth more fully in the STD Plan. (13).

4. Denies. (13).

---

[1] All references to numbers "000001" through "000023" are to the Bates Stamped pages annexed as Exhibit "A" to the Declaration of Debra McGee dated July 25, 2011, Doc. No. 29 (the "McGee Dec."). All references to numbers "000024" through "000097" are to the Bates Stamped pages annexed as Exhibit "B" to the McGee Dec. All references to numbers "000098" to "000244" are to the Bates Stamped pages annexed as Exhibit "C" to the McGee Dec.

5. Denies, except admits that Martucci was entitled to and did enroll in Group Long Term Disability Plan (the "LTD Plan") for employees of JP Morgan Chase Bank (069), which benefits are funded by Group Insurance Policy No. GLT-675174 issued by Hartford to JP Morgan effective January 1, 2005 with additional Riders effective January 1, 2008. (039-40).

6. Hartford objects to this Statement on the grounds that it is incomplete and unintelligible. To the extent a response is required, Hartford denies the Statement, except admits that the LTD Plan lists certain exclusions from coverage under the LTD Plan, including exclusions from coverage for a member who is not under the Regular Care of a Physician, for any disability that is caused or contributed to by war or act of war, for any disability that is caused by the member's commission of or attempt to commit a felony, or for any disability that is caused or contributed to by an intentionally self-inflicted injury as set forth more fully in the LTD Plan. (050).

7. Denies. (050).

8. Denies, and refers to the LTD Plan, which states:

> **What is Proof of Loss?**
> *Proof of Loss may include but is not limited to the following*:
> 1. documentation of:
>    a) the date Your Disability began;
>    b) the cause of Your Disability;
>    c) the prognosis of Your Disability;
>    d) Your Earnings or income, including but not limited to copies of Your filed and signed federal and state tax returns; and
>    e) evidence that You are under the Regular Care of a Physician;
> 2. any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
> 3. the names and addresses of all:
>    a) Physicians and practitioners of healing arts You have seen or consulted;
>    b) hospitals or other medical facilities in which You have been seen or treated; and
>    c) pharmacies which have filled Your prescriptions within the past three years;
> 4. Your signed authorization for us to obtain and release:
>    a) medical, employment and financial information; and
>    b) any other information we may reasonably require;

>    5. Your signed statement identifying all Other Income Benefits; and
>    6. proof that You and Your dependents have applied for all Other Income Benefits which are available. You will not be required to claim any retirement benefits which You may only get on a reduced basis.

(50-51) (italics supplied).

    9. Denies, except admits that Martucci claimed that she could no longer work due to symptoms caused by chronic fatigue syndrome ("CFS") and fibromyalgia and stopped working at JP Morgan as of August 21, 2009 and then filed a claim for STD benefits, effective August 24, 2009. (113).

    10. Denies, except admits that on October 1, 2009, Oak Orchard Community Health Center, Inc. ("Oak Orchard") faxed to Hartford medical records dated August 24, 2009, September 8, 23, and 30, 2009 from Martucci's treating physician, David S. Bell, M.D., FAAP and on December 1, 2009 Martucci submitted to Hartford test results along with letters from Dr. Bell and Dr. Keller. (156, 167-170, 180, 183-88, 203, 205, 211, 213).

    11. Denies, except admits that by letter dated October 12, 2009, Hartford Ability Analyst Patrick Flores advised Martucci of Hartford's initial decision to deny her claim for STD benefits. (122-125).

    12. Denies and states that Mr. Flores advised Martucci in his October 12, 2009 letter that "[i]n order to be eligible for benefits medical information must support your inability to perform the material and substantial duties of your position on an active employment basis. . . [and] [t]he medical evidence provided does not illustrate that your medical condition causes a functional impairment to such a degree of severity that you are unable to perform the Material and Substantial duties of your position as a Branch Operator Support on an active employment basis" and identified tests that Dr. Bell stated he would perform on Martucci (Single Photon Emission computed Tomography (SPECT) and Magnetic Resonance Imaging (MRI) Scan). (123-124, 141, 210).

13. Denies, except admits that Dr. David Bell, Martucci's treating physician, also treated a claimant, who was represented by Frankel and Newfield, P.C., in *Magee* v. *Metropolitan Life Ins. Co.*, 632 F. Supp. 2d 308 (S.D.N.Y. 2009) and that both Jason Newfield, Esq., who is not a medical doctor, and Dr. Bell also chaired the committee on Chronic Fatigue Syndrome for the U.S. Department of Health and Human Services. (Declaration of Jason Newfield, dated July 28, 2011, Doc. No. 23, Ex. "B" and *see* http://www.frankelnewfield.com/attorneys.asp (last visited August 11, 2011)).

14. Denies, except admits that Dr. Bell submitted results from a November 2, 2009 "NM whole blood volume" examination, which measures a patient's plasma, white blood cell and red blood cell counts and found that results were consistent with "contracted plasma and red blood cell volumes as described" in the report. (154-55).

15. Denies, except admits that a November 13, 2009 letter from Dr. Bell described the results from the "NM whole blood volume" examination and stated that they were consistent with CFS and verified by two studies from the National Institute of Health. (156).

16. Admits. (156).

17. Admits. (156).

18. Denies, except admits that on October 7, 2009, Dr. Bell explained that on June 24, 2009, Martucci underwent in-office testing, which included orthostatic testing, and that the results from the orthostatic testing were not submitted to Hartford until December 1, 2009. (180, 203).

19. Denies, except admits that Dr. Bell's notes from the orthostatic testing reflect that while Martucci stood during the orthostatic testing on June 24, 2009, she expressed subjective complaints of nausea, dizziness, weakness and leg pain, but did not state how or if this had any affect on Martucci's ability to perform the material and substantial duties of her sedentary occupation on a regular basis, which job she was performing on a full time basis at the time of this testing. (180, 213).

20. Denies, except admits that Dr. Bell stated that while Martucci stood she had a drop in her blood pressure, but did not state how or if this had any affect on Martucci's ability to perform the material and substantial duties of her sedentary occupation on a regular basis. (180, 213).

21. Denies, except admits that Dr. Bell stated that the drop in Martucci's blood pressure represented a delayed orthostatic hypotension, but did not state how or if this had any affect on Martucci's ability to perform the material and substantial duties of her sedentary occupation on a regular basis. (180, 213).

22. Admits. (159-162).

23. Denies, except admits that Dr. Keller summarized her findings by stating that Martucci had "low functional capacity and poor ability for aerobic energy production," and based this conclusion on her inaccurate designation of Martucci's maximum oxygen consumption being in the "moderate-marked" category, while it was actually in the "moderate" category according to the ranges listed on her own report. (159-160).

24. Denies, except admits that Dr. Keller incorrectly described Martucci's functional aerobic impairment as the "moderate-marked" degree, although the percentage displayed with her report fell in the "moderate" category, with both the marked and extreme degree categories consisting of substantially higher degrees of impairment. (160).

25. Denies, except admits that Dr. Keller incorrectly described Martucci's functional aerobic impairment as the higher "moderate-marked" degree and stated that Martucci's functional capacity is equivalent to raking leaves or sweeping a garage based on this inaccurate assessment. (160).

26. Denies, except admits that Dr. Keller incorrectly described Martucci's low workload that is equivalent to folding laundry, making a bed or putting away groceries, based on Dr. Keller's inaccurate assessment of Martucci's functional aerobic impairment. (160).

27.     Denies, except admits that Dr. Keller incorrectly described that many normal household activities require Martucci to work above her anaerobic threshold, based on Dr. Keller's inaccurate assessment of Martucci's functional aerobic impairment. (160).

28.     Denies, except admits that Dr. Keller stated that Martucci had diminished functional capacity with "low exercise tolerance and recovery such that many job and household tasks require her to work consistently above her anaerobic threshold," but did not address how or why this would interfere with Martucci's ability to perform the sedentary duties of her occupation, which require little or no aerobic activity at all. (162).

29.     Denies, except admits that Dr. Keller stated that "[t]his intensity of effort, sustained for more than several minutes, will elicit a significant and persistent fatigue response," but did not address how or why this would interfere with Martucci's ability to perform sedentary duties of her occupation, which require little or no aerobic activity at all. (162).

30.     Denies, except admits that on December 31, 2009, Appeal Specialist Debra L. McGee submitted a referral to MES Solutions for the retention of an independent medical record peer review by a physician with a specialty in internal medicine and a subspecialty in rheumatology and that MES Solutions retained David S. Knapp, M.D., who is board certified in internal medicine with a subspecialty in rheumatology. (143, 147-148).

31.     Denies, except admits that Dr. Knapp reviewed all of the medical evidence submitted by Martucci and her doctors and, after several attempts to contact Dr. Bell, spoke with Dr. Bell on January 27, 2010. (141).

32.     Denies, except admits that during Dr. Knapp's telephone conversation with Dr. Bell, Dr. Bell reiterated his findings, explained the research he has performed in the area of CFS that was not specific to Martucci, and identified Martucci's restrictions and limitations without further elaboration. (141).

33. Denies, except admits that during Dr. Knapp's telephone conversation with Dr. Bell, Dr. Bell stated that Martucci's past testing demonstrated the presence of idiopathic hypovolemia and decreased circulating blood volume in the absence of anemia, that the majority of CFS patients had these abnormalities, and that a two day exercise test revealed a low anaerobic threshold which supported his finding of CFS, although he did not state how or if these results related to his findings of restrictions and limitations concerning Martucci's ability to perform sedentary work. (141).

34. Admits. (141-143).

35. Denies, except admits that Dr. Knapp commented upon each test performed on Martucci, advised that the "records do not document clinically significant objective medical or rheumatologic impairments that prevent full time work," and also noted that the diagnostic findings were "non-specific," that Martucci "appears to have complaints out of proportion to any medical or orthopedic pathology documented," and that "[a]dditional diagnostic studies are not available for review that support other medical conditions that are associated with the claimant's symptoms or non-specific diagnostic studies that attribute to the reported chronic fatigue symptoms in the absence of psychiatric and behavioral considerations." (142-143).

36. Denies, except admits that Dr. Knapp advised that the "records do not document clinically significant objective medical or rheumatologic impairments that prevent full time work. The records do not support the need for restrictions or limitations based on the claimant's conditions," and noted that based on the analysis contained in the report of the medical records that were submitted, Dr. Knapp concluded that "[b]ased on the medical information provided I am not in agreement with functional abilities, restrictions and limitations provided by Dr. Bell." (142-143).

37. Admits. (143).

38. Denies, except admits that after Dr. Knapp explained that the records did not document clinically significant objective medical or rheumatologic impairments that prevent full time work, that

the diagnostic findings were non-specific, that additional diagnostic studies were not available for review, and that Martucci appeared to have complaints out of proportion to any medical or orthopedic pathology documented. He then explained that "[i]n the absence of clinical medical impairments, medically unexplained symptoms, fibromyalgia and related functional somatic syndromes including chronic fatigue are often a manifestation of somatization associated with major mood disturbances and anxiety disorders. The medical literature strongly supports behavioral and psychiatric considerations regarding the etiology of fibromyalgia and related functional somatic syndromes." (142-143).

39. Admits. (142-143).

40. Admits. (143).

41. Admits. (142).

42. Admits. (143).

43. Denies, except admits that in his Peer Review Report, Dr. Knapp discussed Martucci's complaints concerning fatigue and hand pain, and then stated that her complaints were out of proportion to any medical or orthopedic pathology documented. Additionally, after explaining that the records did not document clinically significant objective medical or rheumatologic impairments that prevent full time work, that the diagnostic findings were non-specific, and that additional diagnostic studies were not available for review, he then explained that Martucci appeared to have complaints out of proportion to any medical or orthopedic pathology documented. (141-142).

44. Denies, except admits that Ms. McGee sent Martucci a letter dated January 29, 2010, advising her that on appeal, Hartford had upheld its original adverse determination and explaining the reasons for this decision. (117-19).

Dated: New York, New York
      August 18, 2011

Respectfully Submitted,

s/ _____
MICHAEL H. BERNSTEIN (MB 0579)
JOHN T. SEYBERT (JS 5014)
DANIEL M. MEIER (DM 2833)
SEDGWICK, LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
(SDMA File No. 02489-000082)
**Attorneys for Defendant**
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

To:    Jason A. Newfield, Esq.
        FRANKEL & NEWFIELD, P.C.
        585 Stewart Avenue – Suite 312
        Garden City, New York 11530
        Telephone: (516) 222-1600
        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S COUNTER STATEMENT TO PLAINTIFF'S RULE 56.1 STATEMENT** was served **via ECF and Regular Mail** on August 18, 2011, upon the following:

> Jason A. Newfield, Esq.
> FRANKEL & NEWFIELD, P.C.
> 585 Stewart Avenue – Suite 312
> Garden City, New York 11530
> Telephone: (516) 222-1600

Dated: New York, New York
August 18, 2011

                              s/
                        DANIEL M. MEIER (DM 2833)