UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CAROL MARTUCCI,                                                    Civ. Act. No.: 10-cv-6231 (BSJ)

                      Plaintiff,

      -against-

HARTFORD LIFE INSURANCE COMPANY,                                   DOCUMENT
                                                                   ELECTRONICALLY FILED
                      Defendant.
------------------------------------------------------------------X

### DEFENDANT'S REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                    SEDGWICK LLP
                    Attorneys for Defendant
                    HARTFORD LIFE INSURANCE COMPANY
                    125 Broad Street, 39th Floor
                    New York, New York 10004
                    Telephone: (212) 422-0202
                    Facsimile:  (212) 422-0925
                    [Sedgwick File No. 02489-000093]

*Of Counsel*
    Michael H. Bernstein
    John T. Seybert
    Daniel M. Meier

NY/750770v2

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................................. 1

ARGUMENT ............................................................................................................................................. 1

    POINT I:

    HARTFORD'S DENIAL OF MARTUCCI'S CLAIM FOR STD
    BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN
    THE ADMINISTRATIVE RECORD ................................................................................ 1

        A.    Substantial Evidence Supports Hartford's Determination
             That Martucci Was Not Disabled From Her Sedentary
             Position As Of August 24, 2009 ....................................................................... 1

    POINT II:

    HARTFORD'S DETERMINATION WAS NOT INFLUENCED
    BY CONFLICT OF INTEREST ......................................................................................... 6

    POINT III:

    MARTUCCI'S BELATED REQUEST FOR THE DEPOSITION
    OF BRUCE LUDDY SHOULD BE REJECTED ............................................................. 9

CONCLUSION ....................................................................................................................................... 10

CERTIFICATE OF SERVICE .................................................................................................. Attached

## **TABLE OF AUTHORITIES**

Page(s)

### Cases

*Bender* v. *Hartford Life Ins. Co.*,
  No. 09–01163, 2011 WL 3566483 (N.D. Cal. Aug. 12, 2011) ................................................. 8, 9

*Bergquist* v. *Aetna U.S. Healthcare*,
  289 F. Supp. 2d 400 (S.D.N.Y. 2003) ............................................................................................ 3

*Fitzpatrick* v. *Bayer Corp.*,
  No. 04 Civ. 5134, 2008 WL 169318 (S.D.N.Y. Jan. 17, 2008) ..................................................... 5

*Florczyk* v. *Metropolitan Life Ins. Co.*,
  No. 5:06-CV-0309, 2008 WL 3876096 (N.D.N.Y. Jul. 11, 2008) ............................................... 10

*Hobson* v. *Metropolitan Life Inc. Co.*,
  574 F.3d 75 (2d Cir. 2009) ................................................................................................. 5, 7, 10

*Jennison* v. *Hartford Life & Acc. Ins. Co.*,
  No. 3:10-cv-164 (LEK/DEP), 2011 WL 3352449 (N.D.N.Y. Aug. 3, 2011) ................................. 7

*Juliano* v. *Health Maint. Org. of N.J.*,
  221 F.3d 279 (2d Cir. 2000) ........................................................................................................ 5

*Magee* v. *Metropolitan Life Ins. Co.*,
  632 F. Supp. 2d 308 (S.D.N.Y. 2009) ........................................................................................... 4

*Martin* v. *Hartford Life And Acc. Ins. Co.*,
  __ F. Supp. 2d __, 2011 WL 893221 (W.D.N.Y. 2011) ............................................................... 9

*McCauley* v. *First Unum Life Ins. Co.*,
  551 F.3d 126 (2d Cir. 2008) ........................................................................................................ 7

*Metropolitan Life Ins. Co.* v. *Glenn*,
  554 U.S. 105 (2008) ..................................................................................................................... 6

*Mote* v. *Aetna Life Ins. Co.*,
  502 F.3d 601 (7th Cir. 2007) ....................................................................................................... 4

*Mugan* v. *Hartford Life Group Ins. Co.*,
  765 F. Supp. 2d 359 (S.D.N.Y. 2011) ....................................................................................... 7, 8

*Reinhart* v. *Broadspire Servs., Inc.*,
  No. 06-cv-752S, 2011 WL 3273152 (W.D.N.Y. July 29, 2011) ............................................. 1, 10

*Rizzi* v. *Hartford Life and Accident Ins. Co.*,
  613 F. Supp. 2d 1234 (D.N.M. 2009) .......................................................................................... 7

NY/750770v2

*Salute* v. *Aetna Life Ins. Co.*,
   No. 04-cv-2035 (TCP)(MLO), 2005 WL 1962254 (E.D.N.Y. Aug. 9, 2005) ....................................................... 3

*Testa* v. *Hartford Life Ins. Co.*,
   No. 08-CV-816, 2011 WL 795055 (E.D.N.Y. March 1, 2011) ........................................................................... 10

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"), §502 (a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ....... 1

Federal Rule of Civil Procedure 26 ................................................................................................................... 10

**PRELIMINARY STATEMENT**

Defendant, Hartford Life Insurance Company ("Hartford"), submits this memorandum of law in reply to Plaintiff Carol Martucci's ("Martucci") opposition and in further support of its motion for summary judgment dismissing Martucci's Complaint (the "Complaint") for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") §502 (a)(1)(B), 29 U.S.C. §1132(a)(1)(B) on the ground that its decision to deny her claim for continuing short term disability ("STD") benefits under the Group Long Term Disability Plan for employees of JP Morgan (the "Plan") was not arbitrary and capricious.

**ARGUMENT**

**POINT I**
**HARTFORD'S DENIAL OF MARTUCCI'S CLAIM FOR STD BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD**

Martucci concedes that the Plan granted Hartford discretionary authority to determine her claim for STD benefits. (Martucci's Opp. at 1, 9; Martucci's MOL at 1,7).[1]  Therefore, this Court should not disturb Hartford's determination unless it finds that Martucci's opposition identifies "a genuine issue that [Hartford's] determination was arbitrary and capricious." *Reinhart* v. *Broadspire Servs., Inc.*, No. 06-cv-752S, 2011 WL 3273152, *7 (W.D.N.Y. July 29, 2011).  Martucci argues that Hartford's determination was arbitrary and capricious because the medical records in the administrative record show that she was disabled by chronic fatigue syndrome ("CFS") and fibromyalgia and that Hartford lacked substantial evidence to support its claim determination. (Opp. at 5).  For the reasons discussed below, Martucci's challenges to Hartford's decision-making are meritless.

A.  **Substantial Evidence Supports Hartford's Determination That Martucci Was Not Disabled From Her Sedentary Position As Of August 24, 2009**

Hartford denied Martucci's claim for STD benefits based on substantial evidence in the record including: (i) an abundance of "normal" physical examinations recorded in Dr. Bell's office notes (177, 179); (ii) proposed restrictions by Dr. Bell that were inconsistent with the notes he recorded in his contemporaneous treatment records (*Compare* 177-179 *with* 153, 184, 187); (iii) a lack of objective evidence demonstrating that Martucci was

---

[1] Hartford's Memorandum of Law in support of its motion for summary judgment dated July 28, 2011, Doc. No. 33, is hereinafter referenced as "Hartford's MOL."  Martucci's Memorandum of Law in support of her motion dated July 28, 2011, Doc. No. 26, is hereinafter referenced as "Martucci's MOL."  Martucci's Memorandum of Law in Opposition dated August 18, 2011, Doc. No. 34, is hereinafter referenced as "Martucci's Opp."  Hartford's Memorandum of Law in Opposition dated August 18, 2011, Doc. No. 38, is hereinafter referenced as "Hartford's Opp."

1

unable to perform the duties of her sedentary occupation (122-24, 117-19, 141-43);[2] (iv) an independent medical record peer review report by David S. Knapp, M.D. board certified in internal medicine with a subspecialty in rheumatology, who opined that Martucci's medical records did not support her claimed inability to work at a sedentary occupation (141-43); and (v) a description of her responsibilities and physical requirements of her job.[3] (115).

In her opposition, Martucci asserts that the cardiopulmonary testing conducted by Betsy Keller, Ph.D. supported her claims of restrictions and limitations. (Martucci's Opp., pp. 1-4). While the report may demonstrate that Martucci would have problems performing sustained, physically-exhausting household chores, it does not support Martucci's claim that she is unable to perform sedentary work. (164). (Hartford's MOL, p. 19). The report identifies chores such as raking leaves, sweeping a garage, and carrying laundry in a basket up stairs as the types of chores Martucci would have problems performing. (164). None of these tasks, however, require the same (minimal) level of exertion as using a telephone and computer while sitting at a desk. (*Compare* 115 *with* 164). Martucci does not refute this point or explain how these tests demonstrate an inability to perform a sedentary occupation.

Moreover, Dr. Keller's conclusions are undermined by her incorrect reading of Martucci's test results, which reflect "moderate impairment," as opposed to Dr. Keller's misimpression of "severe impairment." (Hartford's MOL, pp. 16-18). Since Dr. Keller's impressions of Martucci's physical limitations were based on a greater degree of impairment than the test results support, her conclusions are not trustworthy. In an effort to bolster Dr. Keller's credibility, Martucci improperly attaches Dr. Christopher Snell's letter dated August 16, 2011, which purports to interpret Dr. Keller's report. (Newfield Dec, Ex. D). This document is clearly outside the

---

[2] Martucci attached as Exhibit "A" to the Declaration of Jason A. Newfield ("Newfield Dec.") dated Aug. 18, 2011, Doc. No. 35, an unauthenticated memorandum regarding evaluating objective evidence, which was printed from an out of date system formerly used by Hartford. This document was produced in another case and has no relevance in this case. Martucci cites to Exhibit "A" to the Newfield Dec. but asserts the document is a "performance evaluation," which it is clearly not. (Martucci's Opp., p. 11).

[3] Martucci argues that Hartford did not argue in its moving memorandum of law that its claim determination was supported by substantial evidence. (Martucci's Opp., p. 5). This assertion is demonstrably false given that Hartford's MOL includes more than seven pages explaining the reasons its determination was based on substantial evidence in the administrative record. (Hartford MOL, pp. 13-20).

2

administrative record and should not be considered by the court.[4] *See Salute* v. *Aetna Life Ins. Co.*, No. 04-cv-2035 (TCP)(MLO), 2005 WL 1962254, *6 (E.D.N.Y. Aug. 9, 2005); *Bergquist* v. *Aetna U.S. Healthcare*, 289 F. Supp. 2d 400, 411 (S.D.N.Y. 2003). Even if the Court considers this improper submission, it still does not cure the problems with Dr. Keller's report. First, Dr. Snell does not assert that Dr. Keller correctly interpreted the results of Martucci's Maximum Oxygen Consumption results; he entirely ignores the issue. (*Id.*). Furthermore, even if non-physicians were allowed to conduct a cardiopulmonary exercise test, this does not mean that a non-physician's medical conclusions about the results of the test provide proper proof. (Hartford's MOL, p. 16). Martucci argues that Dr. Bell's mention of this testing during his conversation with peer reviewer, Dr. Knapp, validated Dr. Keller's conclusions (Martucci's Opp. at 3), but that is not accurate. Dr. Bell did nothing more than demonstrate his familiarity with Dr. Keller's conclusion. (141). He did not interpret the Report or provide any information other than a conclusory statement that he understood that the exercise test revealed a "low anaerobic threshold." (141). Notably, the report was not in existence when Dr. Bell opined that Martucci could not work in a sedentary position. (*Compare* 239 *with* 193, 205). At the time Dr. Bell found that Martucci could not work *at all* in a sedentary occupation, he only had the results of the SF-36 examination. (205).

The results of the SF-36 examination provide no explanation of how these results impact Martucci's functional ability. (205). Dr. Bell summarized the results of the SF-36 examination in his October 23, 2009 letter but did not identify any particular result showing how CFS impacted Martucci's ability to perform the duties of her sedentary job. Notably, these "results," which were not provided to Hartford, are derived from a form given to Martucci to take home and complete (178), and are not based on any examination. The results are based on the patient's answers to questions on a form regarding her subjective complaints. So, while Martucci faults Hartford for not demanding these results from Dr. Bell, Martucci's answers to the questions on the "examination" would not have provided any further objective evidence of her condition—only more of her subjective complaints. (126). Thus, while it is Martucci's burden to submit this evidence to Hartford, the answers she gave to the SF-36 would not have provided Hartford with objective evidence showing how her subjective

---

[4] Hartford objects to Martucci's use of Dr. Snell's letter, which not only is not part of the administrative record, but was written after the moving briefs were served and filed with the court, in an attempt to improperly accrete the record in this case. The Court is respectfully referred to Hartford's motion to strike simultaneously filed herewith. Therefore, this Court should not consider it as it was not part of the administrative record.

complaints interfered with her ability to work.

Martucci cites *Magee* v. *Metropolitan Life Ins. Co.*, 632 F. Supp. 2d 308, 313 (S.D.N.Y. 2009) to support her argument that the SF-36 examination can provide objective test results. (Martucci Opp., p. 7, n.7). But *Magee* is inapposite because the defendant in that case challenged the diagnosis of CFS and the SF-36 examination results are probative of that diagnosis. *Magee*, 632 F. Supp. 2d at 319. Moreover, the reference to an SF-36 exam cited by Martucci is merely a quote from Dr. Bell that SF-36 is "an extremely validated indicator of overall disability." *Magee*, 632 F. Supp. 2d at 313. It was not a finding by the court that this test is sufficient to establish a claimant's functional abilities. Indeed, the Court in *Magee* made no such finding; it remanded the matter for further consideration of this proof. *See Magee*, 632 F. Supp. 2d at 322.

Having failed to point to any evidence in the administrative record that supports a finding that she cannot work in a sedentary position due to symptoms associated with CFS, Martucci argues that the few comments Dr. Bell provided to Dr. Knapp were sufficient support for her claim of impairment. (Martucci MOL, pp. 5-6). But Dr. Knapp's notes from his discussion with Dr. Bell do not identify any new tests or results that support Dr. Bell's proposed restrictions for Martucci. (141). Moreover, there is no mention by Dr. Bell about what had changed in Martucci's condition to warrant his increase in recommended restrictions and limitations from her to being able to work approximately thirty hours per week to not being able to work at all. It could not have been the exercise test conducted by Dr. Keller, which was performed on November 30, 2009 — a month after Dr. Bell changed his proposed restrictions. (*Compare* 167-70 *with* 205). It also could not have been when Dr. Bell received the NM whole blood volume test result because that, too, was received after Dr. Bell changed his proposed restrictions. (211-12). It also could not have been the results of the orthostatic testing done on June 24, 2009 because Martucci was working at that time. (194). Therefore, it appears the only records Dr. Bell found compelling enough to propose restrictions on Martucci of no sedentary work was her answers to the SF-36 form and his belief that she was not exaggerating her symptoms. (180). But, claims administrators such as Hartford are not free to accept a claimants' complaints without verifying those complaints with objective evidence. *See Mote* v. *Aetna Life Ins. Co.*, 502 F.3d 601, 607 (7th Cir. 2007) ("Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk))."

4

Dr. Knapp, the independent peer review consultant, also did not merely accept Martucci's subjective complaints without considering that she might be overstating her symptoms. Since Dr. Knapp did not accept at face value Martucci's complaints, she challenges his competency and accuses him of rendering a conclusory opinion and of misstating Dr. Bell's comments to him. (Martucci Opp. at 5-8). Dr. Knapp is board certified in internal medicine with additional certification in rheumatology. (143); see *Fitzpatrick* v. *Bayer Corp.,* No. 04 Civ. 5134, 2008 WL 169318, at *14 (S.D.N.Y. Jan. 17, 2008). Unlike, Dr. Bell, Dr. Knapp actually has a certification in the area of practice concerning Martucci's alleged conditions. (*See* Hartford Opp., p. 14) Thus, Martucci's attacks on Dr. Knapp's qualifications are baseless. Similarly, Martucci's argument that Dr. Knapp's three-page peer review report was unsupported and generic (Martucci Opp. at 5-8) is without merit. The main problem with Martucci's submissions was the lack of objective proof demonstrating how her purported symptoms from CFS interfered with her ability to perform sedentary work. Dr. Knapp addressed this very lack of objective evidence and then commented upon Martucci's sizeable number of subjective complaints, and ultimately posited that other diagnostic possibilities were never even explored by Martucci's treating physicians. (142-43). This analysis is not only detailed, but contains far more analysis than any report or note provided by Dr. Bell.

Martucci's argument that Dr. Knapp was required to perform a physical examination has been squarely rejected by the Second Circuit. *See Hobson* v. *Metropolitan Life Inc. Co.,* 574 F.3d 75, 90-91 (2d Cir. 2009). Furthermore, it is unclear what Martucci would expect such an examination to reveal since Dr. Bell's notes indicate that his own physical examinations of her were all normal. (177, 179).

Martucci's argument that Dr. Knapp should have had his conversation with Dr. Bell recorded and transcribed or provided a copy of his notes to Dr. Bell for comment is nonsensical and unsupported in the law. Dr. Knapp has no more duty to do this than Dr. Bell has a duty to similarly record and transcribe his interaction with other doctors. The administrative appeals process is designed to encourage a flow of information, and a peer-to-peer discussion only serves to confirm a medical doctor's understanding of the records — it is not meant to be a forum to present additional evidence. *See Juliano* v. *Health Maint. Org. of N.J.,* 221 F.3d 279, 287 (2d Cir. 2000). Accordingly, all of these challenges to Dr. Knapp's opinion are meritless and should be disregarded. (141-144).

Martucci argues that Hartford's explanations for its finding that her submissions were not sufficient

5

evidence to support her claim for STD benefits constitute *post-hoc* arguments. This argument is baseless because Hartford raised all of these points in its October 12, 2009 initial denial letter (122-24) and its January 29, 2010 appeal uphold letter. (117-19). The administrative record reflects that Hartford consistently requested objective proof demonstrating Martucci's purported functional impairments and her continued failure to submit such proof. (122-24). Moreover, Dr. Bell promised to provide the results of additional tests but did not do so. (Hartford's Opp., p. 9). Lastly, to the extent there is any objective proof in the record, Dr. Keller's report, which was not submitted until Martucci's administrative appeal, shows that Martucci had the ability to perform sedentary work. (141).

Ultimately, Martucci's failure to provide objective evidence demonstrating her inability to perform the essential duties of her occupation, along with the inaccuracy and inadequacy of the evidence she did submit, merely underscores the complete lack of any evidence demonstrating her restrictions and limitations. Accordingly, Hartford's decision to terminate STD benefits effective August 24, 2009 was based on substantial evidence in the administrative record, was not arbitrary and capricious, and should not be disturbed by this Court.

## POINT II
## HARTFORD'S DETERMINATION WAS NOT
## INFLUENCED BY CONFLICT OF INTEREST

In her opposition, Martucci repeats her legally meritless contention that the U.S. Supreme Court's ruling in *Metropolitan Life Ins. Co.* v. *Glenn ("Glenn")*, 554 U.S. 105, 110 (2008) applies and requires this Court to weigh Hartford's conflict of interest as a factor in determining whether its determination was arbitrary and capricious. (Martucci's Opp., pp. 8-13). In *Glenn*, 554 U.S. at 108, the Court only found a dual role insurance company that both decides and pays benefit claims under a grant of discretionary authority to be operating under a structural conflict of interest. *Id.* Here, Hartford does not fund or pay benefits under the STD Plan. Since Martucci's argument ignores the fundamental reason for the Court's ruling in *Glenn*, the Court should reject her argument in its entirety.

Notwithstanding the undisputed proof showing that Hartford has no financial conflict of interest as the claim administrator for the governing self-funded Plan, Martucci argues that Hartford is conflicted regardless of its lack of any financial stake in the outcome of this matter because it administers claims under this Plan in the same manner as claims under fully insured plans. (Martucci's Opp., p. 12). This argument has nothing to do with

conflict of interest considerations, which are simply inapplicable here. To the extent this Court may consider Martucci's wrong-headed arguments and weigh conflict of interest as a factor, the Second Circuit ruled in *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008) that the Court should decline to afford "conflict of interest *any weight* in [its review of the claims administrator's] benefit denial" if the plaintiff cannot demonstrate that conflict of interest considerations actually influenced the administrator's decision-making. (emphasis added); *see Hobson*, 574 F.3d at 83. In order to show the existence of a conflict of interest, Martucci merely argues that Hartford improperly agreed with the independent medical peer review consultant's opinion, purportedly concluded a "one-sided" review of her claim, and selectively reviewed her proof. (Martucci's Opp., pp. 9-11; Hartford's Opp., p. 21). Contrary to Martucci's contentions, however, the retention of an independent medical record peer review consultant, such as Dr. Knapp, to review and report his findings is evidence of an *unbiased* review. *Rizzi* v. *Hartford Life and Accident Ins. Co.*, 613 F. Supp. 2d 1234, 1248 (D.N.M. 2009). Further, Hartford considered every medical record that was submitted by Martucci and even requested clarifications. This is not evidence of a biased "one-sided" or selective review.

Hartford also submitted affirmative proof detailing the active steps it takes to reduce the influence of conflict of interest on its decision-making. Hartford provided the Declarations of Bruce Luddy ("Luddy") and Debra Magee demonstrating how Hartford "walls off" claims from finances departments. (Hartford's MOL, pp. 20-24); *see Jennison* v. *Hartford Life & Acc. Ins. Co.*, No. 3:10-cv-164 (LEK/DEP), 2011 WL 3352449, *8 (N.D.N.Y. Aug. 3, 2011). These Declarations show that "Hartford does not provide its claims examiners, appeals specialists, or other similar employees with benefits or compensation that are tied to denying claims; Hartford maintains separate units for claims and appeals; each appeal specialist must make an independent assessment of the claim and does not consult the individual who made the initial benefits decision; and the claims and appeals units are wholly separate from financing and underwriting units." *Mugan* v. *Hartford Life Group Ins. Co.*, 765 F. Supp. 2d 359, 372 (S.D.N.Y. 2011).

Having failed to adduce any evidence of a conflict of interest in discovery, Martucci misleadingly relies on evidence in other cases to suggest the existence of a conflict of interest in this one. Since Martucci's reference to this evidence is improper and because these documents were not disclosed in discovery in this case, this Court

7

should not consider these submissions.[5] Nevertheless, Martucci's attempts to utilize evidence developed outside of this case are a telling indictment of her argument that Hartford's decision-making was biased in this case. Martucci resorts to attaching documents from *Barrett* v. *Hartford Life and Accident Insurance Company*, Dkt No. 10-cv-4600 (AKH) (S.D.N.Y. 2011), an unrelated case, in order to provide "support" for her meritless conflict arguments. In that case, plaintiff requested and received from Hartford voluminous documents in discovery *specifically related to the performance evaluations and compensation information for the Ability Analyst and Appeals Specialist who actually decided that claim*. None of that material, however, was submitted by Barrett in support of her conflict arguments because none of it supported her baseless claim that conflict of interest influenced Hartford's decision-making in that case. Instead, the "evidence" that Martucci references from *Barrett*[6] irrelevantly pertains to a Rehabilitation Specialist who assists claimants to return to work, not Ability Analysts and Appeals Specialists who actually decide claims. This evidence is probative of nothing in this case because Martucci did not seek assistance to return to work. Thus Martucci's confusing and inappropriate arguments, which inaccurately attempt to show that persons other than those who decided Martucci's claim may have a financial bias, should be rejected. *See Mugan*, 765 F. Supp. 2d at 373.

Martucci's meritless attacks on the Luddy Declaration are also unavailing. First, she argues that his declaration is in conflict with the performance appraisals that were improperly attached to the Newfield Declaration. This argument is baseless since none of the performance appraisals even discuss the number of claims approved or denied, which is consistent with Luddy's statements. Second, Martucci offers the deposition testimony of Luddy in *Bender* v. *Hartford Life Ins. Co.*, No. 09–01163, venued in the U.S. District Court for the Northern District of California, and argues that his deposition testimony is inconsistent with his declaration.[7] Yet, again, however, Luddy's deposition testimony is entirely consistent with his declaration. Martucci implies that Luddy testified in *Bender* that salary or bonus determinations are driven by the number of denials an analysts makes. (Martucci's Opp. at 12). This baseless mischaracterization of Luddy's testimony cannot be squared with

---

[5] The Court is respectfully referred to Hartford's motion to strike simultaneously served herewith.
[6] This "evidence" consists of papers that were produced in *Jacoby* v. *Hartford Life Ins. Co.*, not in *Barrett*. Since obtaining the documents, numerous counsel across the country have found those documents utterly unpersuasive, not only because of the lack of relevance to the facts of the case but because plaintiffs' counsel's interpretation of the documents is illogical.
[7] Hartford is seeking to strike these improper submissions. The Court's attention is respectfully referred to Hartford's motion to strike, which is simultaneously served herewith.

the transcript which shows that Luddy testified that salary and bonus for an Ability Analyst and Appeals Specialist are affected by their performance evaluations, which are *not* based in any way on the number of claims denied. (Luddy Dec. ¶¶ 8-9). Notably, in *Bender* v. *Hartford Life Ins. Co.*, No. 09–01163, 2011 WL 3566483 (N.D. Cal. Aug. 12, 2011), the District Court granted summary judgment dismissing the case and considered both a Luddy declaration similar to the one filed in this case, and this deposition testimony, and found that the two do not contradict each other. Moreover, the court found that this proof demonstrates that Hartford had taken measures to "reduce potential bias and to promote accuracy." *Id.* at *12. Thus, Martucci's assertions regarding inconsistencies between his declaration and deposition testimony have no merit.

### POINT III
### MARTUCCI'S BELATED REQUEST FOR THE DEPOSITION OF BRUCE LUDDY SHOULD BE REJECTED

Martucci argues that the Luddy Declaration should be stricken or that Luddy should be produced for deposition because he was not identified in Hartford's initial disclosures as a witness. (Opp. at 13-14; Newfield Decl. ¶ 6). First, the request to strike is procedurally improper since it is not made by motion. *See Martin* v. *Hartford Life And Acc. Ins. Co.*, __ F. Supp. 2d __, 2011 WL 893221, *7 (W.D.N.Y. 2011). Second, and more importantly, Martucci's suggestion that she did not have sufficient notice of Luddy or the content of his Declaration is not credible because he was identified in Hartford's response to Martucci's Request for Interrogatories (Reply Declaration of Michael H. Bernstein dated September 9, 2011, Ex. "C," Response No. 19) as a member of Hartford's claims personnel with knowledge of Hartford's employee compensation structure and provisions for claims handling personnel. Martucci had the opportunity during discovery to seek Luddy's deposition, yet she chose not to do so. Indeed, Martucci attached to her motion the deposition transcript of Luddy from the *Bender* case. (Newfield Dec., Ex. "B"). She was obviously aware of Luddy and the information he could provide. Martucci cannot now claim pursuant to Rule 56(f) that she "cannot present facts essential to justify its opposition," because of her own decision to forego this discovery. In fact, this Court extended discovery from April 21, 2011 to June 20, 2011 to allow Martucci sufficient time to complete such activities. (Doc. Nos. 11). Given the foregoing, Martucci's argument that the Luddy Declaration should be stricken on the grounds that she had no notice of him as a potential witness must be rejected as demonstrably false.

Furthermore, Martucci's procedural argument is wrong on the law because Hartford met its disclosure

9

obligations under the Federal Rules of Civil Procedure.  First, Rule 26(a) disclosures do not apply to actions, such as the matter *sub judice*, that require administrative record reviews by the Court.  FED. R. CIV. P. 26(a)(1)(B)(i).  Second, as explained above, Luddy was identified in Hartford's Responses to Plaintiff's Interrogatories.  Third, plaintiff has the burden of proof to show how conflict of interest affected Hartford's decision-making on her claim.  *See Hobson*, 574 F.3d at 83.  Accordingly Defendant did not have an obligation to disclose the identity of rebuttal witnesses for an issue on which it did not bear the burden of proof.  FED. R. CIV. P. 26(a)(1)(A)(i).

Lastly, this argument is not sufficient to demonstrate that Hartford's decision-making was arbitrary and capricious.  *See Reinhart*, 2011 WL 3273152, at *7.  Since it is undisputed that Hartford has no financial liability in the payment of STD benefits, Hartford has no conflict of interest bias as a matter of law.  *See Testa* v. *Hartford Life Ins. Co.*, No. 08-CV-816, 2011 WL 795055, at *7-8 (E.D.N.Y. March 1, 2011).  Since Hartford's determination was based on substantial evidence in the record, this Court should not disturb it.  *Florczyk* v. *Metropolitan Life Ins. Co.*, No. 5:06-CV-0309, 2008 WL 3876096 (N.D.N.Y. Jul. 11, 2008).

For the foregoing reasons, Martucci should not be allowed to re-open discovery at this late date to take the deposition of Bruce Luddy.

## **CONCLUSION**

For the foregoing reasons and those set forth in Hartford's initial Memorandum of Law in support of this motion, as well as the reasons set forth in Hartford's opposition to Martucci's motion for summary judgment, this Court should grant Hartford's motion for summary judgment, dismissing Martucci's Complaint.

Dated:  New York, New York
　　　　September 9, 2011

　　　　　　　　　　　　　　　　　　Respectfully Submitted,
　　　　　　　　　　　　　　　　　　s/_____
　　　　　　　　　　　　　　　　　　Michael H. Bernstein (MB 0579)
　　　　　　　　　　　　　　　　　　John T. Seybert (JS 5014)
　　　　　　　　　　　　　　　　　　Daniel M. Meier (DM 2833)
　　　　　　　　　　　　　　　　　　SEDGWICK LLP
　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
　　　　　　　　　　　　　　　　　　125 Broad Street, 39th Floor
　　　　　　　　　　　　　　　　　　New York, New York 10004
　　　　　　　　　　　　　　　　　　Telephone: (212) 422-0202
　　　　　　　　　　　　　　　　　　Facsimile:  (212) 422-0925
　　　　　　　　　　　　　　　　　　[Sedgwick File No. 02489-000093]

## CERTIFICATE OF SERVICE

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served via ECF on this 9th day of September, 2011, upon the following:

>Jason A. Newfield, Esq.
>FRANKEL & NEWFIELD, P.C.
>585 Stewart Avenue – Suite 312
>Garden City, New York 11530
>Telephone: (516) 222-1600
>*Attorneys for Plaintiff*

>s/_____
>DANIEL M. MEIER (DM 2833)

Dated:   New York, New York
         September 9, 2011

NY/750770v2