Jason A. Newfield (JN-5529
Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

CAROL MARTUCCI,                            :
                                           :        10 CV 6231 (BSJ)(RLE)
                         Plaintiff,        :
                                           :        **ECF**
          - against -                      :
                                           :
HARTFORD LIFE INS. CO.                     :
                                           :
                         Defendant.        :

------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600
Attorneys for Plaintiff

Of Counsel:        Jason A. Newfield (JN-5529)
                   Justin C. Frankel (JF-5983)

# TABLE OF CONTENTS

**Page**

INTRODUCTION……………………………………………………………………...1

I.   HARTFORD'S BEST PRACTICES MEMO HELPS THE COURT IN
     ADDRESSING PROCEDURAL INQUIRIES AND IS THUS APPROPRIATE
     TO BE CONSIDERED……………………………………………………….…..1

II.  THE LUDDY DEPOSITION SHOULD BE CONSIDERED……………………………...2

III. HARTFORD'S RELEVANCY ARGUMENT FAILS………………………………....4

IV.  THE SNELL REPORT SERVES TO DEMONSTRATE THAT THE
     CARDIOPULMONARY TESTING IS QUALITY EVIDENCE…………………………5

CONCLUSION…………………………………………………………………….....7

*i*

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

Hall v. United of Omaha Life Ins. Co.
2011 U.S Dist. LEXIS 36855 (S.D. Ill. 2011)…………………………………………………6

Magee v. Met Life Ins. Co.
632 F.Supp.2d 308, 318-19 (S.D.N.Y. 2009)…………………………………………………..6

Richard v. Fleet Fin. Group Inc. Ltd. Emple. Benefits Plan
367 Fed. Appx. 230, 233 (2d Cir. 2010)…………………………………………………………1

Strope v. UnumProvident Corp.
2010 U.S. Dist. LEXIS 28313 (W.D.N.Y. 2010)……………………………………………6

Zervos v. Verizon, N.Y.
277 F.3d 635, 646 (2d Cir. 2002)……………………………………………………………2

## INTRODUCTION

Plaintiff Carol Martucci ("Martucci") respectfully submits this memorandum in opposition to Defendant's motion seeking to strike documents submitted by Martucci on the pending motions for summary judgment.  Hartford seeks to strike four (4) documents, which are described below.

1.      Exhibit "A" to Newfield Declaration, Hartford's Best Practices Memo;

2.      Exhibit "B" to Newfield Declaration, Deposition of Bruce Luddy;

3.      Exhibit "C" to Newfield Declaration, Hartford Performance Appraisals and Incentive Awards.

4.      Exhibit "D" to Newfield Declaration, Dr. Christopher Snell, report concerning Cardiopulmonary Exercise Testing;

Defendant's motion to strike these materials should be denied in the Court's exercise of its discretion.  Hartford's argument that the Court "must not consider any evidence outside of the 'administrative record', which consists solely of those documents before the claims administrator at the time it made its final benefit determination" is completely disingenuous, as it has submitted two affidavits which it relies upon in an effort to demonstrate that Hartford's claim handling structure should enable it to argue for no consideration of any typical conflict of interest.

While Hartford was able to limit the scope of the administrative record with Martucci, it cannot now seek to limit the scope of materials before the Court's consideration, when Hartford itself has brought these issues before the Court.

## I.      HARTFORD'S BEST PRACTICES MEMO HELPS THE COURT IN ADDRESSING PROCEDURAL INQUIRIES AND IS THUS APPROPRIATE TO BE CONSIDERED.

Hartford argues that Richard v. Fleet Fin. Group Inc. Ltd. Emple. Benefits Plan, 367 Fed. Appx. 230, 233 (2d Cir. 2010) supports its argument that the Court should strike the exhibits

attached to the Newfield Declaration.  In fact, the Second Circuit discussed the potential for "extra-record evidence" to be considered, where it held that such evidence "might sometimes be admissible to assist procedural inquiries."  Id.  The Second Circuit, in <u>Zervos v. Verizon, N.Y.</u>, 277 F.3d 635, 646 (2d Cir. 2002), stated that "the District Court should not accept information from the insurer that was not part of the original record unless the insured was instrumental in causing the information to be added to the record."    Yet, Hartford itself has submitted extra-record materials.

The Best Practices Memo which Martucci submitted serves to assist the Court in addressing procedural inquiries regarding the fairness of the claim process and whether Martucci actually received a full and fair review of her claim.  Hartford claims that this material is "unauthenticated, outdated and irrelevant", and that the record does not show that Hartford considered this material in connection with Martucci's claim.  (Motion to strike, P.5).  The fact Hartford's claim personnel ignored Hartford's law department's guidance regarding the requirement for objective evidence is evidence supporting Hartford's failure to afford Martucci a full and fair review.


## II.    <u>THE LUDDY DEPOSITION SHOULD BE CONSIDERED</u>

Martucci also submitted a deposition transcript from Bruce Luddy, who submitted a declaration with Hartford's Motion for Summary Judgment.  Hartford has no issue with the Court considering extra-record evidence which it has crafted after the close of the administrative record, but objects to evidence which would serve to impeach Bruce Luddy's credibility, and would be utilized to assist the Court in its procedural inquiries.  Hartford accuses Martucci of sand bagging, a term that more appropriately should be applied to its conduct, submitting extra-record declarations

2

from Bruce Luddy and Debra McGee.[1]

Given the procedural posture of this case, with Hartford's submission of extra-record materials that it seeks to have the Court consider, it is appropriate for the Court to also consider the Luddy deposition.[2]   Bruce Luddy testified in a deposition that the claim personnel receive compensation, including salary and bonus, on the basis of their performance evaluations.[3]   Bruce Luddy also testified that the claims personnel are generally aware of the profitability of the group benefits division.  See Luddy Depo., p.58, lines 3-6.  Since Hartford cannot avoid the implications of this testimony upon the credibility of the Luddy Declaration, it is forced to seek to strike this material, so that critical evidence which undercuts Hartford's argument does not come to light.

Hartford misrepresents Martucci's argument, suggesting that Martucci makes "wildly inaccurate" arguments, that Hartford pays its claims and appeals personnel bonuses based on the number of claims they deny.  (Mot. To Strike, P.10).  Martucci did not make that argument, but, rather, cited to the deposition transcript of Bruce Luddy, who testified that claim personnel receive compensation on the basis of their performance reviews. Martucci also cited the Luddy deposition transcript as evidence that claim personnel are generally aware of the profitability of the group benefits division.  Although Hartford argues that the deposition testimony is entirely consistent with

---

[1]      Hartford claims that Martucci failed to produce any of the documents it has submitted during "discovery", but fails to acknowledge that Hartford did not serve any discovery or create any obligations upon Martucci to produce any materials.  Hartford later argues that it was prevented from "having an opportunity to make further discovery demands" (Mot. To Strike, P.12), yet, fails to appreciate that Hartford made no discovery demands at any point in this case.

[2]      Martucci has also sought to obtain the deposition of Bruce Luddy in this matter.

[3]      See p. 18, lines 6-11 ("The compensation that people receive in terms of salary or bonus is based upon their performance evaluations.)

Luddy's declaration, this is left for the Court to determine, as well as whether a deposition in this case would assist the trier of fact on an issue of procedural inquiries.

It is simply incongruent that Hartford would unabashedly submit a self serving declaration from Bruce Luddy, and then object to the submission of his own testimony, which calls into question the veracity of his declaration.

### III.    HARTFORD'S RELEVANCY ARGUMENT FAILS

Hartford argues that the performance evaluation submitted lacks relevancy, and thus should be stricken.  To support this position, Hartford cites to Rule 401 of the Federal Rules of Evidence, which states that evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable that it would be without the evidence."

The performance evaluation can be harmonized with this Rule, in that the information contained on the performance evaluation tends to support and make it more probable for the Court to not afford the Luddy Declaration any significant weight.  That the performance evaluation was from another action involving Hartford does not make the document less relevant.

While Hartford has gone to great lengths to develop insulation about its claim handling process, and the potential impact of a conflict of interest upon this process, it seems manifestly unjust for Hartford to urge that documents which tend to demonstrate holes in the carefully crafted declaration should be stricken.

4

## IV.    THE SNELL REPORT SERVES TO DEMONSTRATE THAT THE CARDIOPULMONARY TESTING IS QUALITY EVIDENCE

Hartford, through the post-hac arguments presented by counsel for the first time in litigation, has attacked the validity of the testing performed by Dr. Betsy Keller, as well as her ability to offer opinions upon Martucci's functionality.  In essence, Hartford has attacked not only Dr. Keller's qualifications, but the interpretation of the testing results.  The Snell report serves to strongly rebut the dual attacks which were only raised in litigation, and were not part of the claim review process.

In fact, Hartford's hired medical reviewer failed to address any concerns with the administration of the testing, or of Dr. Keller's qualifications.  Rather, Dr. Knapp simply rejected the results out of hand.  Nor did Hartford's claim personnel take issue with either the qualifications of Dr. Keller or of her interpretation of the results.  Instead, Ms. McGee simply blindly adopted Dr. Knapp's cursory opinion and outright rejection of the evidence, without any meaningful consideration of the issues.

In litigation, recognizing the substantive strength of this testing, Hartford's counsel attempted to mend the hole and took positions as if medically trained, engaging in the type of vigorous challenging of the medical evidence that would have been appropriate for Dr. Knapp to engage in, but failed to.  Thus, the Snell report was submitted both to provide the Court with some better appreciation of the significance of the testing results, and to help the Court appreciate the qualifications of Dr. Keller.  Hartford argues that "[i]f Martucci thought that the Snell letter would be persuasive in demonstrating that the exercise test and Dr. Betsy Keller's conclusions were correct, then she should have submitted it to Hartford while her claim was under consideration."  (Mot. To Strike, P.9).  This is the most incredulous argument put forth within the entire motion.

5

First, given that Hartford never addressed any attacks upon the CPET testing by Dr. Keller until the legal briefing of this case, there would never have been a reason to further demonstrate the significance of the test results.   The record demonstrates that Hartford never raised the issues concerning either Dr. Keller's qualifications or the significance of the test results during the administrative process.   Moreover, Martucci was not represented by counsel during the administrative claim process, and was never properly advised of what Hartford's claim concerns were with any detail.

Second, this argument serves to underscore the blatant omissions from Hartford's contact with Martucci, the failure to engage in a meaningful dialogue to have her appreciate what would be necessary for her to perfect her claim.  Magee v. Met Life Ins. Co., 632 F.Supp.2d 308, 318-19 (S.D.N.Y. 2009).  As noted in Magee, the inadequate notice is a further indication that its decision was arbitrary and capricious.  Id.; see also Strope v. UnumProvident Corp., 2010 U.S. Dist. LEXIS 28313, *21 (W.D.N.Y. 2010).

It is respectfully submitted that the Court may take judicial notice of Dr. Keller's qualifications and thus need not rely upon the Snell report for such information.  Exhibit "D" has been submitted to counter statements made in Hartford's motion for summary judgment that were never raised during the administrative process.  See Hall v. United of Omaha Life Ins. Co., 2011 U.S Dist. LEXIS 36855 (S.D. Ill. 2011).  In its effort to support Hartford's rejection of Martucci's CPET testing evidence, Hartford argued that Dr. Keller is not a medical doctor and thus is not legally competent to offer a medical opinion.  Thus, the Snell report is effectively a rebuttal to that newly raised argument.

6

**CONCLUSION**

Hartford's motion to strike should be denied in its entirety.

Dated: Garden City, New York
       September 22, 2011

Respectfully Submitted,

_____

Frankel & Newfield, P.C.
Attorneys for Plaintiff
Carol Martucci

7