USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
                                          :

CAROL MARTUCCI,                   :
                                          :

                 Plaintiff,    :    10 Civ. 6231(BSJ)(RLE)
                                          :    **Memorandum & Order**

       v.                       :

                                          :

HARTFORD LIFE INSURANCE CO.,    :

                 Defendant.   :
------------------------------------X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff Carol Martucci brings this action against
Defendant Hartford Life Insurance Company to recover short-term
and long-term disability benefits denied under ERISA §
502(a)(1)(B).  29 U.S.C. § 1132(a)(1)(B).  Plaintiff and
Defendant have submitted cross-motions for summary judgment.
For the following reasons, Plaintiff's motion for summary
judgment is DENIED and Defendant's motion for summary judgment
is GRANTED.


### Background

    The facts are taken from the administrative record
contained in the July 25, 2011 declaration of Debra McGee.[1]

---

[1] The administrative record will be cited to as "Admin. Rec." and follow the
Bates numbering in the McGee declaration.  Specifically, Bates numbers 000001

1

In December 2005, Plaintiff began working 40-hour weeks at JP Morgan Chase as a branch operation support employee in a telephone call center, a desk job where the bulk of her work involved using a computer and telephone while seated.  She was an eligible participant in JP Morgan Chase's Disability Leave Policy ("STD Plan"), which provided short-term disability benefits, and in the Long Term Disability Policy ("LTD Plan"), which provided long-term disability benefits.  The STD Plan was administered by Defendant, which made the final decisions about benefits claims, while JP Morgan Chase paid any disability benefits that were approved.

In 2005, Dr. David S. Bell, M.D., Plaintiff's treating physician, began following Plaintiff's health, monitoring her for symptoms of Chronic Fatigue Syndrome (CFS) and fibromyalgia. On August 21, 2009, Plaintiff stopped working due to the effects of CFS and fibromyalgia and, on August 24, 2009, Plaintiff filed a claim for short-term disability benefits under the STD Plan. Plaintiff then returned to work on September 9, 2009, only to stop work again on September 18, 2009.

On October 12, 2009, Defendant made an initial determination to deny Plaintiff's claim for short-term

to 000023 correspond to Exhibit A of the McGee declaration, Bates numbers 000024 to 000097 correspond to Exhibit B of the McGee declaration, and Bates numbers 000098 to 000244 correspond to Exhibit C of the McGee declaration.

disability benefits. On December 8, 2009, Plaintiff appealed.

On January 29, 2010, Defendant decided her appeal, again denying

Plaintiff's claim. Despite the onset of CFS and fibromyalgia,

both the initial determination and appeals decision found that

Plaintiff was not disabled under the definitions of the STD

Plan.

The STD Plan gives Defendant "complete authority" to

determine whether employees qualify as disabled and defines

disability as an injury or illness that prevents an employee

from "perform[ing] the material and substantial duties of [her]

position on an active employment basis." Admin. Rec. at 000003,

000022. Under this plan definition, an employee is disabled

when they can no longer maintain an "active employment basis,"

which is defined as "[p]erforming all the duties that pertain to

your work on a regular basis at the place where they are

normally performed or where they're required to be performed by

JPMorgan Chase." Admin. Rec. at 000003.

During the initial review, Beverly G. Brown, a nurse for

Defendant, conducted an initial intake interview over the phone

with Plaintiff on September 8, 2009. On October 1, 2009,

Plaintiff faxed a record of medical documents to Defendant,

which included an August 24, 2009 letter from Dr. Bell, a

September 8, 2009 examination report from David M. Pike, a

physician assistant, two examination reports from Dr. Bell dated

3

September 23, 2009 and September 30, 2009, a September 30, 2009 note from Dr. Bell excusing Plaintiff from work, and an October 7, 2009 letter from Dr. Bell replying to Defendant's request for clarification of Plaintiff's condition.

In his August 24 letter, Dr. Bell confirmed Plaintiff's CFS and fibromyalgia diagnoses, concluding that she was not completely disabled but should have her activity restricted to a 30-hour workweek without any overtime. Admin. Rec. at 000175. Pike's September 8 report assessed Plaintiff with fatigue and fibromyalgia but placed Plaintiff's overall health status as normal and within the "Adult Normal" category. Admin. Rec. at 000179. Dr. Bell's September 23 report noted that Plaintiff stated that she could not work due to pain in her hands and fatigue and that she would be reassessed the following week. Admin. Rec. at 000178. During the following week's visit, documented in the September 30 report, Dr. Bell noted Plaintiff's CFS and fibromyalgia diagnoses but again classified Plaintiff's general health as "Adult Normal." Admin. Rec. at 000177.

The September 30 report also recommended that Plaintiff take one month off from work and then be reevaluated; Dr. Bell then signed the September 30 work release note, which stated that Plaintiff was "unable to work from September 30 to October 30." Admin. Rec. at 000176. After receiving these examination

4

reports and letters, Defendant requested further information from Dr. Bell, who responded in the October 7 letter that working full-time was "very difficult" for Plaintiff and that he believed Plaintiff's subjective self-assessment that she could not work a 40-hour workweek.  Admin. Rec. at 000180.  Due to her self-assessment, he again recommended that Plaintiff take one month of leave from work and be excused from working overtime.

Paula Ennis, a nurse for Defendant, then completed a review of these records and made notes in Plaintiff's file.  Ability Analyst Patrick Flores evaluated the initial administrative record and, in an October 12, 2009 letter, denied Plaintiff's claim because she had not met the definition of disability under the STD Plan.  Admin. Rec. at 000122-25.  Flores explained that Plaintiff had not established a "documented loss of function" beyond her CFS and fibromyalgia diagnoses and her self-reported symptoms of pain.  Admin. Rec. at 000124.

Upon filing her December 8, 2009 appeal, Plaintiff provided additional medical records to Defendant.  These records included results from four tests: an October 2009 SF-36 questionnaire, a June 24, 2009 orthostatic test, a November 2, 2009 NM whole blood volume test, and a November 2009 cardiopulmonary exercise test.  The cardiopulmonary exercise test was performed by Dr. Betsy Keller, who has a Ph.D. in Exercise Science and is a professor of Exercise and Sports Sciences at Ithaca College.

The test examined Plaintiff's tolerance for physical exertion in terms of oxygen capacity.  Plaintiff was rated in four categories: maximum oxygen consumption, anaerobic threshold, ventilation, and hemodynamic response.

According to Dr. Keller, Plaintiff's ventilation and hemodynamic response scores were normal, although her maximum oxygen consumption and anaerobic threshold scores placed her in the "moderate [to] marked" category because her "functional aerobic impairment" was 53 percent lower than "active age-matched females."  Admin. Rec. at 000160.  Dr. Keller indicated that "many normal" household chores, such as folding laundry, carrying a basket of laundry up a flight of stairs, making a bed, raking leaves, or putting away groceries, would physically exhaust Plaintiff based on the amount of oxygen needed to perform those tasks.  Dr. Keller also remarked that "most job tasks" require "less than 5 METS" and that Plaintiff peaked at 4.1 METS, concluding that Plaintiff's "ability to perform such activities is very limited" since she would have to "work at or above maximum maximum effort" to do so.[2]  Admin. Rec. at 000162. As Defendant emphasizes, while Plaintiff might be unable to perform the household chores listed by Dr. Keller, Dr. Keller never affirmatively concluded that Plaintiff could not perform

[2] Notably, Dr. Keller is silent as to what number of METS is required to perform "most job tasks," except to say it is *below* 5 METS.

the substantial duties of her job, namely typing and talking on the phone, nor did Dr. Keller describe the specific tasks included in the category of "most job tasks" that Plaintiff could not perform.

The blood volume test and SF-36 questionnaire served primarily to confirm Plaintiff's diagnoses.  In a November 13, 2009 letter, Dr. Bell described the blood volume test results as "strikingly abnormal," consistent with the onset of CFS, but he did not use it draw any conclusions about Plaintiff's ability to do her job.  Admin. Rec. at 000171.  In an October 23, 2009 letter, Dr. Bell reported that the results of the SF-36 questionnaire showed that Plaintiff was "clearly and totally disabled," so that she was unable "to participate in sustained work, either sedentary work or more active work."  Admin. Rec. at 000205.  As for the orthostatic test, Dr. Bell referenced it in his October 7 letter, explaining that Plaintiff's blood pressure dropped sharply after standing for thirty minutes, which was indicative of CFS and fibromyalgia.  Admin. Rec. at 000180.

Appeal Specialist Debra L. McGee oversaw Plaintiff's appeal and arranged for an independent paper review of Plaintiff's medical records by Dr. David S. Knapp, M.D., who is board certified in internal medicine with a specialization in rheumatology.  Along with the paper review of Plaintiff's

7

medical records, Dr. Knapp also spoke with Dr. Bell about Plaintiff's condition over the telephone on January 27, 2010.

Dr. Knapp then compiled his findings in a report, concluding that Plaintiff's record did "not document clinically significant objective medical or rheumatologic impairments that prevent full time work." Admin. Rec. at 000143. He went on to observe that Plaintiff "appears to have complaints out of proportion to any medical or orthopedic pathology documented" and that "fibromyalgia is not a condition that requires restrictions and limitations in the absence of clinically significant objective orthopedic, medical or neurologic impairments as determined by physical examination, imaging studies and/or laboratory testing." Admin. Rec. at 000143.

McGee then reviewed Plaintiff's medical records and Dr. Knapp's report, deciding that the initial determination was correct. McGee wrote that Plaintiff's claim was properly denied because she had not shown a "functional impairment that would have precluded [her] from performing the duties of [her] occupation." Admin. Rec. at 000118. Based on Dr. Bell's reports, the independent review of Dr. Knapp, and Plaintiff's other medical records, McGee determined that, while Plaintiff might suffer from CFS and fibromyalgia, she was not so incapacitated that she could not perform the "material and substantial" duties of her job. Admin. Rec. at 000117-19.

8

### *Discussion*

Summary judgment may only be granted when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002). The parties do not dispute the contents of the administrative record, so there is no genuinely disputed issue of material fact at hand. The only dispute concerns whether Defendant's decision to deny Plaintiff benefits, based on the undisputed administrated record, was wrong.

Since neither party disputes that Defendant had complete discretion in making its benefits determinations, the Court may only overturn Defendant's denial of benefits for an abuse of discretion. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008). Under this deferential standard, the Court must find that the administrator's determination was arbitrary and capricious, such that it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley*, 551 F.3d at 132 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). Consequently, the Court's review is limited and it may not substitute its judgment for that of the benefits administrator. *See Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83–84 (2d Cir. 2009).

In addition, benefits claimants are entitled to a full and fair review of their disability claims. 29 U.S.C. § 1133(2). This requires that administrators follow proper procedural protocols in how they review claims, how much weight they assign different types of records, and how they reach decisions. *See Hobson*, 574 F.3d at 86-87; *Finkelstein v. UBS Global Asset Mgmt. (US) Inc.*, No. 11 CV 00356, 2011 WL 3586437, at *7 (S.D.N.Y. Aug. 9, 2011).

Citing to *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), Plaintiff mistakenly argues that Defendant is subject to a higher level of scrutiny due to a conflict of interest. As the Second Circuit has explained, however, the first step in the *Glenn* analysis is "whether the 'plan administrator both evaluates claims for benefits and pays benefits claims.'" *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010) (quoting *Glenn*, 554 U.S. at 112). Although Plaintiff admits that Defendant did not pay the benefits it administered, Plaintiff nevertheless insists that a conflict of interest pervaded Defendant's determinations because an "employer's own conflict may extend to its selection of an insurance company to administer its plan." Pl.'s Mem. Supp. Summ. J. 5 (quoting *Glenn*, 554 U.S. at 113-14).

Plaintiff's reliance on *Glenn* is misplaced.[3]  In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that an employer who held the "dual role" of administrator and payor of benefits created a conflict of interest in its claims process that required heightened scrutiny.  489 U.S. 101, 115 (1989). In *Glenn*, the Supreme Court extended the holding of *Firestone* to insurers that occupied this dual role.  *Glenn*, 554 U.S. at 114. The distinction at play in *Glenn* was whether an *insurer* that both decided and paid benefits was subject to the same heightened scrutiny applied to an *employer* that both administered and paid benefits, as held in *Firestone*—not whether an insurer in the role of administrator was corrupted when selected by an employer in the role of payor.  *Id.*  In *Glenn*,

---

[3] Alternatively, Plaintiff argues in a footnote that a conflict of interest exists because Defendant occupies the dual role of payor and administrator under the LTD Plan when determining long-term disability benefits.  Pl.'s Mem. Supp. Summ. J. 6 n.2.  Plaintiff contends that once short-term benefits under the STD Plan expire, they automatically mature into long-term benefits that Defendant would have to pay under the LTD Plan.  According to Plaintiff, this gives Defendant a perverse incentive to deny benefits under the STD Plan in order to avoid later paying long-term disability benefits.  Plaintiff is wrong on this point:  It is true that exhaustion of short-term benefits is required to become *eligible* for long-term benefits but, under the terms of the LTD Plan, Plaintiff would still have to reapply for long-term disability benefits.  Admin. Rec. at 000011; *id.* at 000072–74.

the benefits administrator, MetLife, was an insurer that both
paid and administered benefits, occupying the dual role of
administrator and payor.  *Id.*  The Supreme Court debated whether
insurers occupying the dual role of administrator and payor were
inherently self-regulating and, as a result, less conflicted
than employers occupying the dual role.  *Id.*  Ultimately, the
Supreme Court held that an insurer occupying the dual role of
payor and administrator was subject to a conflict of interest
and, consequently, a heightened level of scrutiny.  *Id.*
Contrary to Plaintiff's contention, the Supreme Court never held
that a conflict would apply to an insurer that did not both
administer and pay benefits and, accordingly, the conflict of
interest factor is entirely inapplicable to Defendant.[4]

---

[4] The Court notes that Plaintiff might also be arguing that, even when an
administrator does not pay benefits, a conflict of interest would still bias
the administrator because the payor's interest in paying the least amount of
benefits would lead the payor to select an administrator with the same
interest.  This argument is unpersuasive.  Plaintiff's reasoning goes much
further than *Glenn* since Plaintiff would tag all administrators with a
conflict of interest except, presumably, those selected by a third party
other than the employer.  *See Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d
427, 438-39 (S.D.N.Y. 2010).  Plaintiff's argument is also unavailing because
administrators, such as Defendant, have an incentive to eschew such selection
bias in order to protect their professional reputation.  *Id.*

## A. Defendant's Motion to Strike

Before reviewing Plaintiff's claim, the Court must decide Defendant's motion to strike Exhibits A through D of the August 18, 2011 declaration of Jason Newfield, each of which is evidence outside of the administrative record.   Exhibit A is a "Best Practices Memo" allegedly produced by Defendant in an Eastern District of New York case against Defendant; Exhibit B is a deposition transcript of Bruce Luddy from a Northern District of California case against Defendant, in which Luddy described how Defendant compensates its employees; Exhibit C is an affirmation of Scott Reimer from another case against Defendant in this district that purportedly describes how Defendant's employees are compensated and provides Hartford's Business Performance Award & Individual Performance Award memorandum; Exhibit D is a letter from Dr. Christopher Snell, Chair of the Chronic Fatigue Syndrome Advisory Committee, which is a federal committee that provides advice and recommendations to the Department of Health and Human Services.   Dr. Snell's letter verifies the credentials of Dr. Betsy Keller, the medical professional who performed Plaintiff's cardiopulmonary exercise test, and validates cardiopulmonary exercise testing as a method of measuring the effects of CFS and fibromyalgia.

The Court may only consider evidence outside of the administrative record for "good cause" but, even when there is

good cause, the Court has discretion in whether to consider such evidence. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Plaintiff offers Exhibits B and C to evidence a conflict of interest but there is not good cause to admit these exhibits for that purpose. As Plaintiff admits and the Court explained above, a conflict of interest only exists when an employee benefits administrator both decides and pays benefits and, here, Defendant did not pay the disability benefits it administered.[5] *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). As for Exhibits A and D, Plaintiff has not shown good cause for why they should be considered either. With respect to Exhibit A, the Best Practices Memo does not dictate or set the standard for what constitutes a full and fair review. The Court evaluates the fairness of Defendant's review of Plaintiff's claim based on the administrative record and the applicable law. As for Exhibit D, Plaintiff has not shown good cause for why Dr. Snell's letter was not introduced into the administrative record during Defendant's review of her claim. Further, even if the Court were to admit Exhibit D, it would not change the outcome of the Court's ruling on Defendant's determination. Accordingly, Defendant's motion to strike Exhibits A through D of the Newfield declaration is granted.

---

[5] For the same reason, the Court also denies Plaintiff's request to depose Luddy.

14

**B. Plaintiff's Short-Term Disability Claim**

Upon reviewing this administrative record, the Court finds that Defendant's initial determination and appeals decision denying Plaintiff's short-term benefits claim were not arbitrary and capricious because they were supported by substantial evidence in the administrative record after a full and fair review of Plaintiff's claim.

**1. Defendant's Determinations Were Supported by Substantial Evidence**

In reviewing Plaintiff's claim, Defendant considered Plaintiff's subjective self-assessments of her condition but also factored in Dr. Bell's records, the objective test results, and Dr. Knapp's independent review into its evaluation to determine the extent of her disability.  Although the SF-36 test characterized Plaintiff as completely disabled, Dr. Knapp's independent review concluded that none of the other tests, nor the medical reports, suggested that Plaintiff was so disabled by CFS and fibromyalgia that she could not perform the "material and substantial duties" of her position.  Accordingly, even accepting Plaintiff's diagnoses as valid, Defendant found that the administrative record showed that these diseases would not prevent Plaintiff from performing the substantial duties of her

position, which required her to sit at a desk while making phone calls and typing on a computer.

As previously noted, the letters and reports in the record did not document that Plaintiff's CFS and fibromyalgia were so disabling that Plaintiff could not perform her job under the terms of the STD Plan. Pike's October 8 report and Dr. Bell's September 23 and September 30 reports all suggested that Plaintiff's general health was within normal limits and only recommended that Plaintiff take one month off of work and work a reduced, 30-hour workweek. As a whole, these reports described an individual suffering from CFS and fibromyalgia but healthy enough to perform the duties of her desk job.

Further, in his October 7 clarification letter, Dr. Bell explained that it would be "very difficult" for Plaintiff to work and that he believed her when she claimed that she could not work a 40-hour workweek. This was consistent with Dr. Bell's August 24 letter, which stated that Plaintiff "[was] not completely disabled" and could continue to perform her job duties with a reduction in her weekly hours. Dr. Bell's September 30 report, which recommended that Plaintiff take one month off of work and then be reassessed, was also consistent with the October 7 letter since neither declared Plaintiff completely disabled and unfit to perform her job. Taken together, it was reasonable for Defendant to conclude that Dr.

16

Bell's letters and reports did not indicate that Plaintiff was sufficiently debilitated to qualify as disabled within the definition of the STD Plan.  This, along with Dr. Knapp's independent review, served to discredit any claims in Plaintiff's medical records that she was completely disabled.

The test results submitted by Plaintiff only reinforced Defendant's evaluation of Plaintiff's condition.  It was largely through its review of these tests, in combination with Dr. Bell's reports, that Defendant determined that Plaintiff could still work despite being diagnosed with CFS and fibromyalgia. There is some dispute about Dr. Keller's qualifications and her execution of the cardiopulmonary exercise test but, assuming both are acceptable, the results of the cardiopulmonary examination still demonstrated that Plaintiff was capable of performing her job.  Dr. Keller concluded that the results showed that household chores, such as folding laundry, carrying a basket of laundry up a flight of stairs, making a bed, raking leaves, or putting away groceries, would physically exhaust Plaintiff and that "most" job tasks required greater oxygen consumption than Plaintiff could sustain.  Nonetheless, Defendant observed that nothing in Dr. Keller's report indicated that Plaintiff could not accomplish the main tasks of her particular job, namely typing and talking on the phone, and found this view supported by Dr. Knapp's report.  The blood

17

volume test also confirmed Plaintiff's diagnoses without
providing any conclusions about her ability to perform the
specific functions of her job.  Only the subjective SF-36
questionnaire, consisting of questions answered by the patient,
deemed Plaintiff fully debilitated and, in his October 23 letter
interpreting the results of the SF-36 questionnaire, Dr. Bell
classified Plaintiff as "completely disabled."  Nevertheless,
Defendant found this classification unsubstantiated by the
objective evidence and contradicted by Dr. Bell's other reports
and letters.

**2. Plaintiff Received a Full and Fair Review**

     Plaintiff largely argues that she did not receive a full
and fair review of her claim because Defendant engaged in a
"one-sided" evaluation that intentionally ignored Dr. Bell's
opinion.  She also argues that the independent paper review by
Dr. Knapp was less credible than Dr. Bell's personal observation
of Plaintiff and that Defendant gave a superficial treatment to
Plaintiff's subjective complaints while improperly requiring
objective evidence of her disability.

     Plaintiff contends that Defendant's review was one-sided
because Defendant "blindly" adopted Dr. Knapp's analysis without
adequately weighing Dr. Bell's opinions.  As an initial matter,
an administrator is not required to give a claimant's treating

physician extra weight or special consideration in disability
determinations and it was permissible for Defendant to accord
greater weight to Dr. Knapp's opinion. *See Demirovic v. Bldg.
Serv. 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006);
*Diamond v. Reliance Standard Life Ins.*, 672 F. Supp. 2d 530, 537
(S.D.N.Y. 2009) (noting that "courts in this district have found
that an administrator's reliance on the opinions of non-
examining physicians over the plaintiff's own treating
physicians is not, in and of itself, arbitrary and capricious").
This is especially so when, as here, an independent physician's
report contradicts the claimant's treating physician. *Hobson*,
574 F.3d at 85, 90.  Further, in light of the fact that Dr.
Knapp is a board certified internist with a specialty in
rheumatology, while Dr. Bell is a primary care physician with
experience in the CFS field, it was reasonable for Defendant to
rely heavily on Dr. Knapp in its evaluation of rheumatological
disorders such as CFS and fibromyalgia.

Also contrary to Plaintiff's contentions, Defendant gave
ample weight to Dr. Bell's opinion and in part based its
determinations on his letters and examination reports.
Defendant's serious consideration of Dr. Bell's opinion is
further reflected in its request for the October 7 clarification
letter from Dr. Bell and Dr. Knapp's phone interview of Dr.
Bell.  Admin. Rec. at 000126-27.  These were efforts made by

19

Defendant to obtain more information from Dr. Bell in order to better understand his prognosis.

Next, Plaintiff argues that Dr. Knapp's paper review was insufficient without an in-person examination, making it less credible than Dr. Bell's long-term, personal observation of Plaintiff.  Despite Plaintiff's protestations, paper reviews are accepted as a valid and substantial form of independent review since physicians routinely form opinions based solely on a review of a patient's medical records.  *Hobson*, 574 F.3d at 91. Moreover, as opposed to assessing Plaintiff herself, the purpose of Dr. Knapp's review was to assess Dr. Bell's opinion and the results of Plaintiff's tests, neither of which required an in-person examination of Plaintiff.

Plaintiff has also argued that Defendant's review was not full and fair because Dr. Knapp's report was not rigorous and detailed.  In fact, Dr. Knapp's report appears complete and thorough since it scrutinizes individually all of Plaintiff's medical records and each of the tests performed on Plaintiff. Admin. Rec. at 000141-44.

Lastly, Plaintiff argues that Defendant erred in requesting objective evidence and giving this objective evidence more weight than Plaintiff's subjective self-assessments.  While a claims administrator may not wholly ignore subjective evidence, administrators may rely upon proof other than a claimant's

subjective view of her ability to work, even in fibromyalgia and
CFS cases. *See Hobson,* 574 F.3d at 88; *Tortora v. SBC Commc'ns,
Inc.*, 739 F. Supp. 2d 427, 443–44 (S.D.N.Y. 2010); *Magee v.
Metro. Life Ins. Co.*, 632 F. Supp. 2d 308, 318 (S.D.N.Y. 2009)
("A distinction exists . . . between the amount of fatigue or
pain an individual experiences, which . . . is entirely
subjective, and how much an individual's degree of pain or
fatigue limits his functional capabilities, which can be
objectively measured." (quoting *Williams v. Aetna Life Ins. Co.*,
509 F.3d 317, 323 (7th Cir. 2007))).  In the fibromyalgia and
CFS contexts, where diagnosis can only be made subjectively, it
is reasonable to require objective evidence to measure the
magnitude of disability caused by those diseases. *See e.g.*,
*Diamond*, 672 F. Supp. 2d at 537; *Magee*, 632 F. Supp. 2d at 318.

      As Plaintiff herself acknowledged by submitting three
objective test results, there are several tests that can measure
the debilitation caused by CFS or fibromyalgia, including the
cardiopulmonary exercise test, NM blood volume test, and
orthostatic test that Plaintiff completed.  To force
administrators to accept the subjective self-assessment of
employees at face value, would invite fraud and abuse upon the
claims administration process. *See Hobson*, 574 F.3d at 88.  As
such, it was fair for Defendant to require objective evidence of

the extent of Plaintiff's disability and to use that objective
evidence in analyzing Plaintiff's subjective self-assessments.


## C. Plaintiff's Long-Term Disability Claim

Plaintiff never applied for long-term disability benefits
and, so, has not exhausted her administrative remedies in regard
to this claim.  For this reason, Plaintiff's long-term
disability claim is not ripe for adjudication and must be
dismissed.  *See Paese v. Hartford Life & Accident Ins. Co.*, 449
F.3d 435, 443-46 (2d Cir. 2006); *Kennedy v. Empire Blue Cross &
Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).


### *Conclusion*

For the foregoing reasons, Plaintiff's motion for summary
judgment is DENIED and Defendant's motion for summary judgment
is GRANTED.  The Clerk of the Court is directed to close this
case.

**SO ORDERED:**

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York

           March 27, 2012